354 So.2d 686 (1978)
Eugene N. COOKMEYER
v.
Joann Karl COOKMEYER.
No. 8264.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
*688 Gerald P. Webre, Metairie, for plaintiff-appellant.
Walter F. Gemeinhardt, New Orleans, for defendant-appellee.
Before REDMANN, STOULIG and GARSAUD, JJ.
REDMANN, Judge.
This is an appeal by an ex-husband from a judgment partially accounting for the community on his ex-wife's "rule to distribute proceeds of sales" of a double house belonging to the community and a four-apartment building belonging to the husband. We[1] had deemed this procedure productive of multiple litigation at best, and a distribution of assets to a debtor without offsetting his debts at worst. Disinclined to indulge the parties' impressive litigiousness or to allow to either any cash rightfully the other's, we had remanded for the one, complete and final partition we thought provided by the Louisiana Code of Civil Procedure (while acknowledging the parties' right to divide funds by consent, just as they had earlier in withdrawing $1,500 each). The Louisiana Supreme Court granted writs and remanded to us.
We therefore now attempt to settle as much of the community as the record will allow.

Post-Separation Proceedings
After our December 7, 1970 dismissal of the husband's appeal from the judgment of separation and its denial of alimony to himself (he is unemployed, disabled by a motorcycle accident during the marriage), the husband asked rehearing and we on December 29 authorized trial court proceedings to correct the date of filing the bond; 244 So.2d 78.
On January 18 the husband petitioned for the correction.
On January 29 the wife filed a rule for the return to her of items the husband had removed from their home (metal box of papers, doll, phonograph records, handyman's encyclopedia, wig case, four bottles of liquor, and kitchen garbage can).
On February 1 the husband petitioned "for settlement of community" (without asking that a notary be appointed to conduct the partition), and an inventory was ordered.
Also on February 1 he filed a motion to fix visitation rights and for contempt.
On February 9 he withdrew his application for rehearing in the court of appeal (thus terminating the community as of filing of the separation suit, La.C.C. 155).
Also on February 9 the petition to settle community was served on the wife through counsel.
On February 12 the rule was tried, with visitation rights agreed upon and the contempt rule continued without date.
On April 6 the wife answered the petition to settle community, asserting the erstwhile pendency of the application for rehearing in the court of appeal as requiring dismissal of *689 the "petition for partition". The wife's answer also alternatively prayed that "a descriptive list be substituted in lieu of an inventory".
On May 6 the wife filed a rule to rescind the "order to take an inventory". After one continuance that rule resulted in an order of May 21 "that the inventory be taken on May 26, 1971 at 4:00 p. m."
On June 21 the husband filed a rule to reduce alimony.
On July 6 the wife filed a rule to increase alimony and modify visitation rights.
On July 29 the husband petitioned for divorce for two years' separation.
On September 3 the wife answered (denying marriage in 1962, and asserting it occurred in 1963although at the trial, transcript pages 11 through 15, considerable time was spent questioning the husband's testimony that his petition was indeed incorrect and that 1963, as the wife had pleaded, was the correct date: the husband's separate property was bought in the intervening year).
On September 7 the alimony rules were both dismissed.
On September 20 the inventory was filed. It listed only physical assets and was silent on debts.
On October 19 the husband's rule to traverse the inventory sought deletion of three items, asserting (1) that the fourplex and furnishings in three of its apartments were his separate property; (2) that no $1,700 cash existed (as of the filing for separation?); and (3) that the automobile valued at $2,500 "was sold after the separation, that mover was unable to pay the notes on the said vehicle, and that a mortgage existed upon it".
Also on October 19 judgment of divorce was rendered and signed.
On November 29, after trial October 27, there was judgment on the rule to traverse inventory, which (1) found the fourplex community or joint venture property, reciting that the wife had given the husband $1,000 towards the "down payment" and that his father loaned $2,350 repaid by the community; (2) held the $1,700 cash and (3) the $2,500 automobile properly inventoried; and (4) also held a pistol and a 1963 automobile the husband's separate property.
On November 12 the husband moved for a new trial as to the fourplex.
On November 14 he filed a rule to partition the community double house by sheriff's sale.
On December 22 new trial on the rule to traverse inventory was denied.
On February 3, 1972 the notary and appraisers filed a rule to fix and pay their fees.
On February 4 the wife filed a rule for contempt and for appointment of a trustee to collect rents and pay house notes because the husband was six installments delinquent.
Also on February 4 the husband appealed from the judgment on the rule to traverse inventory.
On February 11 he filed a rule for contempt (for refusing visitation) and for reduction of alimony.
On February 23 a "consent judgment" appointed a trustee to collect the fourplex rents; ordered sold at private sale both the fourplex (for a price to be agreed upon) and the double (for $35,000); ordered the husband to pay past due house note installments; and continued indefinitely the rule for contempt.
On April 6 the wife filed a rule to make the husband sell the fourplex for $25,000.
On April 18 an "amended judgment" ordered the sale of the fourplex for $25,000 and that the proceeds from both properties be held pending further orders of the court.
On May 1 there was judgment on the rule for notary's and appraisers' fees (heard February 18).
(There here appears in the record a September 20 denial of writs by the Supreme Court in State v. Eugene N. Cookmeyer. The relationship of that proceeding to this is not shown.) *690 On October 6 the wife filed a rule to restrict visitation (because "he allowed the children to go on the `Flying Horses' [merry-go-round] at City Park (a dangerous instrumentality). . . [and] has used vulgar language in the presence" of the children).
On November 2 the husband filed a "rule for reduction of alimony, contempt and for disbursement of community funds", reciting, among other things, that the community double had been sold on April 21, producing a net $8,942.94 deposited in the Fidelity Homestead; that the clerk of court and the rent-trustee were unpaid creditors; that these undisputedly community funds, after paying those creditors, should be disbursed to the husband and wife.
On November 14 (just as she had on April 6, 1971 opposed the husband's "petition to settle community"), the wife opposed the rule for disbursement of community funds, filing an "exception of no cause of action and no right of action" which argued that the trial court's jurisdiction was divested by the husband's appeal on the rule to traverse inventory.
On December 5, the court ordered the clerk and the trustee paid a total of $386 "out of the community funds" and authorized the spouses to withdraw $1,500 each "from the community funds . . . at the Security Homestead", i. e., the disputed funds from the fourplex. On February 2, 1973, an "amended judgment" specified the $386 was also to come from "community funds . . . at the Security Homestead".
On March 13 we reversed the judgment on the rule to traverse inventory, and held the fourplex to be the separate property of the husband; 274 So.2d 739.
On April 8 the wife filed the present "rule to distribute proceeds from sales of [the community double and the husband's separate fourplex]". The wife's rule claimed, in addition to half the net proceeds from the sale of the community double, credit for half of the following separate debts of the husband paid out of the double's gross proceeds: (1) Commercial Securities, $497.75; (2) past due installments on the fourplex, $868.85; (3) husband's attorney for loan to pay installments on fourplex, $383.40. The wife further asked payment for other debts she claimed the husband owed her: half of (4) a $235 insurance cancellation refund; (5) the $2,500 inventory value of the automobile; (6) a net $700 ($1,200 less $500 since the wife also got $500) of $1,700 cash divided when they separated; as well as the full amount of (7) the $1,000 the wife when single loaned to the husband towards the down payment of the fourplex; plus half of (8) the $2,350 repaid to the husband's father for a loan towards the down payment of the fourplex; and (9) $10,567.69 allegedly paid during the community on the husband's fourplex notes. The wife asked for $15,025.55 (more than the total of the items she listed).
This "rule to distribute" was set for April 24, continued at the husband's request to May 7 and then partially tried; continued at the wife's request from May 23 to June 19; then tried June 26, 1974.
On November 12, 1975, after allowing memoranda, the court entered the judgment the husband appealed from. That judgment simply awarded to the wife the entire $8,942.94 proceeds of the community double plus $3,118.00 of the $4,965.25 proceeds of the husband's separate fourplex, a total of $12,060.94, leaving $1,847.25 for the husband.
On November 25 the husband moved for a new trial, provoking extensive memoranda, including a reply memorandum by the wife which sets out the exact calculation of the judgment. Awarded to her, on the items we above numbered, were: (1) $248.87; (2) $434.42; (3) $191.70; (4) $117.50; (5) $1,250; (6) $350; (7) $1,000; (8) $1,175; and (9) $4,321.98. Those amounts plus $4,471.47 (half of the $8,942.94 net proceeds) totalled $13,560.94, from which was deducted the full $1,500 the wife had received by judgment of December 5, 1972 (from the separate property proceeds), for the final total of $12,060.94.
On June 30, 1976 new trial was denied.
*691 On July 30 the husband petitioned for an appeal. After one 30-day extension of return day to November 1, 1976, the record was lodged in our court, which heard the matter June 3, 1977, decided it June 30, and refused rehearing September 9.
The trial court's judgment had left many assets of small value and several debts of uncertain amount unaccounted for. Thus unable for lack of evidence to finally settle the community or even to say how much of the cash on hand should go to which spouse (unless we were to hold further claim to asset or debt precluded by the rule), and believing that the Code of Civil Procedure mandated partition by a notary[2], with all questions to be preserved by him, C.C.P. 4608, for final settlement in one litigation, we annulled and remanded "for proceedings consistent with C.C.P. 4604 and following." 349 So.2d 366.
On October 10 the wife applied for writs.
On November 14 the Supreme Court granted writs and remanded to us, "with instruction to decide the case on the merits of the issues presented." 352 So.2d 232.

Appellant's Issues
The appeal is by the husband alone. His brief's first five issues are instances of the court's awarding to the wife, out of the sale proceeds, half of the admitted debts of the husband's separate estate to the community. The husband's argument is that, instead, "the entire sum [of the husband's separate debt in each instance] should be credited to the community and should be thus subject to the debts of the community prior to disbursement to the separate estate of the petitioner and defendant." We reject this argument as inconsequential. Perhaps technically preferable, the husband's procedure would produce no difference in result unless (a) he were also required to account to the community for the other half of his debts to it or (b) the remainder of the community were insufficient to pay its debts. The first circumstance is not present and the second is not proven.
The husband's sixth issue argues that the pre-nuptial loan of $1,000 by the wife to him, if "morally binding", "is in no way legally binding". The premise for this conclusion is unexpressed. Perhaps it is that the loan has prescribed by three years, C.C. 3538. But C.C. 3524 provides that spouses cannot prescribe against each other. Or perhaps, as suggested at trial, the premise is that one spouse's pre-nuptial debt to the other is not demandable in a settlement of community. We disagree; at least the loan would be paraphernal property of the wife for the restitution or reimbursement of which she has a legal mortgage on the husband's property; C.C. 3319(3).
The seventh issue complains of a $1,250 credit to the wife for an automobile inventoried at $2,500. The husband testified that the car was mortgaged for over $2,500 and that he immediately transferred it to the mortgagee in satisfaction of the mortgage debt. The wife relies on his having disposed of the car as entitling her to half its value, yet she testified that the car was bought on credit a few months earlier, with a $3,400 balance. Her testimony thus corroborates his (although she also testified that he wrecked the car three days after they parted, causing "about eleven thousand [sic] dollars worth of damage on it"). This testimony suffices to establish that the community was indebted for mortgage debt equal in value to the value of the car. Thus the car's net value was zero, and it was error to credit the wife for $1,250 without a corresponding debit of $1,250 for the mortgage debt. We therefore reduce the amount awarded to the wife by $1,250 on this item.
The eighth issue is a $350 credit to the wife because of the husband's having taken $1,200 of $1,700 community cash at the time of separation, leaving the wife only $500. The husband testified that he spent this cash on community debts. The *692 wife testified "he had $700 more than I did which he was supposed to pay the bills with." Yet she does not testify that he did not "pay the bills". We believe that it was error for the trial judge to reject, presumably for lack of "corroborating circumstances" within C.C. 2277, the husband's testimony that he spent this extra $700 as both he and the wife testified it was supposed to be spent, especially when the wife did not testify that he did not pay the bills intended to be paid. His testimony was sufficiently corroborated by hers; see Samuels v. Firestone Tire & R. Co., La.1977, 342 So.2d 661. We therefore reduce the award to the wife by this $350 item.
The ninth issue relates to, payment of mortgage notes on the husband's separate property with community funds and an increase ("refinancing") of that mortgage debt. The trial court (1) charged the husband with the interest paid as well as the reduction in principal on the mortgage loan, and (2) did not charge the community for the increase in the loan during the community. These were errors. First, the interest on the separate debt on a husband's income-producing separate property is chargeable to the community; Sharp v. Zeller, 1902, 110 La. 61, 34 So. 129; Succession of Ratcliff, 1946, 209 La. 224, 24 So.2d 456. Second, "debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund . . .", C.C. 2403. (The technically correct position may be that the entire amount of the new loan is a community debt, but that the previous balance of the old loan is a separate debt to the community.) The $4,098.01 increase (from $13,501.99 to $17,600) in the loan represents a net loan during the marriage, a net debt contracted during the marriage, which is a community debt and not the separate debt of the husband. Perhaps more persuasive than the law is the fact: the wife testified that the separate property was refinanced "in order to borrow the cash to put down on the [community] property at Athania." The wife's claim that the husband improved his separate property with these funds, despite its contradiction of her testimony, conceivably prompted the trial judge over a year after trial to charge this community debt of $4,098.01 to the husband, but must be rejected as unproven. The wife did not prove that any funds were used to improve the husband's separate property, much less meet the test of C.C. 2408 by showing "the value of the increase or ameliorations", i. e., the enhancement in the separate property's value; Succession of Singer, 1945, 208 La. 463, 23 So.2d 184. Accordingly (1) we reduce the trial court's fixing of $8,643.97 for principal and interest payments to $2,127.96 for principal alone, due from the husband's separate estate to the community, thereby reducing the wife's half from $4,321.98 to $1,063.98, or a net $3,258.00 reduction of the judgment in favor of the wife. Moreover, (2) we allow the husband credit against the community for the $4,098.01 net community loan upon his separate property, thereby further reducing the wife's judgment by $2,049.00. (Unless this "rule to distribute proceeds" itself constitutes the final community settlement, perhaps the wife can pursue, in a final community settlement, her claim for enhancement of value of the husband's separate immovable itself under C.C. 2408.)
The tenth issue is whether the husband is entitled to credit for payments he made, after the filing of the separation suit, on the mortgage on the community's double house. The judgment arranging alimony and child support allowed the wife to live with the two children in one half and to collect the rent of the other half of the double, and obliged the husband to pay the monthly note on that house out of rentals on the husband's separate property (which the trial court then ruled, erroneously, was community). Thus the court ordered, in effect, the husband to provide housing by paying the note on the community-owned housing. Butespecially in view of its mistaken belief that the rental-producing property was community so that the community debt would be paid with community incomethe court did not decide or order that the husband should enrich the wife's net share of the community by paying the *693 principal of the community's debts out of his separate income. We rule that, despite its belief the source was community funds, the order necessarily envisioned the husband's bearing, as part of alimony and child support, the interest and any tax and insurance components of the monthly mortgage payments (since those items accomplish nothing other than payment, in part, for the use of the double), but not the principal payment. Alimony is not ordinarily intended to provide investment capital for the needy spouse; Naughton v. Naughton, La.App. 4 Cir. 1974, 304 So.2d 679. Accordingly we would allow the husband's claim, but only for the principal of the mortgage debt on the community double paid by him. The record does not establish the exact amount of the reduction in principal. The record does establish that there were 28 monthly payments of $158 each, and that the mortgage balance at the time of the sale was $20,354.54. The record also establishes that the same number of monthly payments in the smaller amount of $113.40 each on the $17,600 fourplex mortgage reduced that smaller mortgage's principal by $764.40 to $16,835.40. This evidence, taken together, makes it more probable than not, and thus proves, Boudreaux v. American Ins. Co., 1972, 262 La. 721, 264 So.2d 621, that the husband's payments subsequent to filing the separation action reduced the community debt principal by at least $764.60. We therefore give him credit for half that amount by deducting $382.30 from the award to the wife.
The eleventh issue is whether the trial court went beyond the relief prayed for in the "rule to distribute proceeds" by also accounting for certain other assets and debts. Partition under C.C.P. 4601-4642 and C.C. 1347-1381 (made applicable by C.C. 1290) accounts for all assets and debts. We are unable to see any unfairness in accounting for such debts as may be proven at a rule to distribute proceeds of sale of some assets (almost all, in value) of the community.
The twelfth issue is a duplication of item (1) of the ninth issue.
The thirteenth issue relates to the sufficiency of proof of the husband's payment of the community property mortgage after the filing of the separation. This is already treated in the tenth issue. If the husband is not satisfied, perhaps (although we express no opinion) further remedy is not precluded by this proceeding.
The fourteenth issue, omitted from the brief but argued orally by counsel for the husband, is the failure to account properly for $1,500 advanced to the wife from the proceeds of the husband's separate property (which the trial court had ruled was community). The husband argues that non-recognition of the separate character of the source of these funds caused improper accounting for them. This argument is baseless. The amount of the judgment in the wife's favor already includes full credit for the whole $1,500 she received. The character of the source of the money is thus irrelevant.

Appellee's Issues
The wife's brief argues primarily that the husband is tardy in asking for relief "after having failed to introduce testimony or evidence at the time that a Motion to Traverse was heard, and at the time that a Rule to Distribute the proceeds from the sale of properties were [sic] heard." We find that there is evidence in the record, and we have cited it in our dispositions above.
The wife's brief asserts "There is no evidence or any proof in the record to reveal the husband's figure in the amount of $2,127.96, as being acceptable" (for principal alone, rather than with interest, paid on his separate property). The fact is that the building and loan payment record is in evidence. It shows that when the parties married on November 4, 1963, the balance on the mortgage loan was $13,989.40, and that the balance as of November 17, 1964 on that loan prior to refinancing was $13,501.99, so that principal had been reduced $487.41 up to that point. The new loan that day in the amount of $17,600 was also reduced, by the time the petition for separation was filed, August 13, 1969, to $15,959.45, for an added *694 reduction of $1,640.55. $1,640.55 plus the earlier reduction of $487.41 totals precisely the $2,127.96 that the wife's brief says is "reveal[ed]" by "no evidence or any proof". The argument is without foundation.
The next argument by the wife's brief is that an earlier opinion of ours held that the husband owed both principal and interest paid on the separate property. Our words (whether holding or not we need not decide), quoted in the wife's brief, asserted liability "for those amounts the community paid to Fidelity Homestead on the purchase price of that property", 274 So.2d 739, 742 (emphasis supplied). Those words do not say that payments on the loan, or on principal and interest of the loan, are reimbursable. The wife's brief misreads them.
The wife's brief next argues that deMonte v. McManus, La.App. 4 Cir. 1974, 294 So.2d 605, obliges us to disregard the husband's claims because they were not pleaded either as affirmative defenses or in reconvention to the wife's rule. We first observe that deMonte involved the mandatory petition (C.C.P. 4603) for partition, which is an "ordinary" proceeding, C.C.P. 851, with preference, C.C.P. 4605, requiring an answer. A rule to show cause, used by the wife in our case, is a summary proceeding, C.C.P. 2592(3), which obliges one only to show, and not to plead, cause: "An answer is not required, except as otherwise provided by law", C.C.P. 2593. It is in an "answer" that affirmative defenses are required to be pleaded, C.C.P. 1005. Furthermore, the wife's own rule asked for distribution of the entire proceeds, as had the husband's earlier rule (and by clear intent his earlier petition to settle community). Moreover, the wife's failure to object at trial to the evidence supporting his claims expanded the pleadings, C.C.P. 1154. Additionally, judicial economy demands that the competing claims of husband and wife be settled with as few trials as possible. Finally, due process, La.Const. art. 1 § 3, and simple justice administered without denial, art. 1 § 22, oblige us not to let one of these litigious spouses get possession of the community cash when the evidence already in the record establishes that the other spouse has a valid claim to additional credit.
Next the wife's brief rhetoricizes, referring to the $4,098.01 net loan during the marriage secured by the husband's separate property, "There is no clue, no cancelled checks or evidence to show traceability of the funds, to show how the husband may have used them." The wife herself testified, as we have quoted in treating this $4,098.01 above, that the refinancing was done to borrow the down payment on the community double. In any case, C.C. 2403 declares as a matter of law, we repeat, that "debts contracted during the marriage enter into the . . . community . . . and must be acquitted out of the common fund . . . ."
The wife's brief also argues that under Arcemont v. Arcemont, La.App.1964, 162 So.2d 813, the husband cannot claim credit for payments on a house made in compliance with an alimony decree. Arcemont is not controlling (especially as to the payment of principal, which alone we have allowed) because the decree here ordered the notes paid out of rentals from property (erroneously) declared to be community in the same decree, and did not order the husband to pay them out of his own income.
Van Morkhoven v. Kleiner, La.App. 3 Cir. 1965, 180 So.2d 601, also cited in the wife's brief, is not in point. It holds only that payments made by the husband on the mortgage on the community house occupied by the wife do not entitle the husband to deduct their amount from the wife's alimony payments.

Decree
The judgment in favor of the ex-wife is reduced by $7,289.30, from $12,060.94 to $4,771.64, payable from the $8,942.94 community proceeds account in Fidelity Homestead together with 4,771.64/8,942.94, or 53.3565%, of the interest or dividends earned on that $8,942.94. The balance of that account and its earnings, and the entirety of the $4,965.25 separate proceeds account with Security Homestead and its earnings are decreed payable to the husband. Costs are to be equally divided.
NOTES
[1] The earlier panel included Morial, J., now resigned, here replaced by Garsaud, J.
[2] See La.C.C.P. 4605: "[I]f the court finds that the plaintiff is entitled to a partition of the property, the court shall appoint a notary to make the partition in accordance with law."