428 So.2d 854 (1983)
Margaret Swall McMANUS
v.
Archie I. McMANUS, Jr.
No. 82 CA 0467.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*855 Ronald W. Wall, Baker, for plaintiff-appellee Margaret Swall McManus.
Thomas D. Benoit, Baker, for defendantappellant Archie I. McManus.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from a judgment fixing the amount of child support in arrears and making the judgment executory.
The record reveals that this couple was divorced in 1968. The plaintiff, Margaret Swall McManus, now McKey, was granted the care, custody and control of the minor children born of the marriage, and Archie I. McManus was ordered to pay child support of $100.00 per month commencing August 1, 1968 and further defendant was ordered to pay all reasonable "mental, dental, medical and optical bills incurred on behalf of said children."
On February 11, 1982, plaintiff filed a rule for contempt, for an increase in child support and to make executory past due child support since March 1, 1979 in the amount of $3,600.00.
At the hearing on plaintiff's rule on April, 1982, the trial judge dismissed plaintiff's rule for contempt and attorney's fees, increased child support to the sum of $200.00 per month effective May 1, 1982, and found the amount of support in arrears to be $3,600.00. The judgment was made executory for said amount.
Defendant-in-rule-appellant contends that the trial court erred (1) in not finding that the plaintiff had waived and/or suspended her right to child support payments during the period in which arrearages were sought; and (2) the trial court erred in failing to find that plaintiff was estopped from claiming child support arrearages for the period at issue.
Appellant essentially contends that plaintiff-in-rule waived and/or suspended her right to collect child support payments for the period in question because of a telephone conversation which occurred sometime in the year 1976. Appellant's version was that his wife called him on the telephone and told him that her present husband wanted to adopt the children. He testified that she told him that she didn't want anything from him "from hereon out, but to let her alone, let the children alone." Appellant's version is that his present wife was listening on the extension telephone and that he informed appellee that he would not consent to the adoption at the present time and that he would subsequently let her know. He further testified that he and his second wife discussed the adoption that night and that since he felt *856 that he had been afforded very little visitation with the children that he would agree to the adoption. The next day he called his former wife and consented to the adoption. During this conversation the former wife advised him that she didn't need his consent because the children could be adopted with or without his consent and her attorney would be in touch with him. Appellee and her husband did not pursue the adoption proceeding. Appellant further contends that he assumed that the children had been adopted since they had been enrolled at school under the name of McKey instead of McManus and additionally appellee ceased to attempt to collect child support payments until the filing of the instant proceeding.
Appellee, Margaret S. McManus, now Ms. McKey, testified that she and appellant were divorced in 1968 and that she has had a court order providing for child support and giving her custody of the children. Ms. McKey testified that she had not been paid any child support since 1972 or 1973, although she had only alleged in her petition that he had not made any payments since March of 1979.[1] Ms. McKey remarried on February 8, 1969 and she testified that at one time in 1973 or 1974 she had spoken to an attorney about her present husband, Mr. McKey, adopting the children. She testified that appellant at this time told her that he would fight the adoption and when she later found out that "he couldn't fight me" she never "went ahead with it." She admitted that the children had been enrolled in school under the name of McKey, but that they were known in school and among their peers both as McKey and McManus. She testified that when her oldest son graduated, his graduation certificate carried the name Archie Edward McManus, but when his name was "called out" at graduation it was Archie McKey. Appellee, Ms. McKey, further testified that she had had continuing difficulty with her ex-husband's failure to make child support payments. She testified that she had to hire a lawyer three times in an effort to track him down and get him to pay, and the third time he was arrested for non-support. She testified that appellant was on probation at one time but that his probation terminated in about 1975 or 1976, and she had not received any support payments thereafter.
The general rule in Louisiana is that an alimony or child support judgment remains in full force and effect in favor of the party to whom it is awarded until the party liable applies to the court and obtains a modification. Seifert v. Seifert, 374 So.2d 157 (La.App. 1st Cir.1979); Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (La.1954); Sampognaro v. Sampognaro, 222 La. 597, 63 So.2d 11 (La.1953).
The party in whose favor the alimony and child support judgment is made is entitled to spend the payment as he or she chooses and has the unrestricted right to determine how funds will be disbursed, Seifert v. Seifert, supra; Cotton v. Wright, 193 La. 520, 190 So. 665 (La.1939); Odum v. Odum, 273 So.2d 576 (La.App. 1st Cir.1973), and the party in whose favor the judgment was rendered may make arrangements with the party liable for payment of alimony and child support in a way other than direct payments or may waive rights under the judgment. Seifert v. Seifert, supra; Odum v. Odum, supra.
The party to whom the alimony or child support award is made is the party entitled to those payments and the owner thereof. Seifert v. Seifert, supra; Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). In Halcomb, the Supreme Court recognized the mother is entitled to delinquent child support payments accruing after the majority or emancipation of minor children.
We cannot agree with appellant that the telephone conversation which took place in 1976 constituted an agreement where the appellant consented to the adoption of his *857 children by appellee's husband, in consideration of appellee agreeing to waive or suspend her rights to collect child support payments under the judgment of January 2, 1968. In Dubroc v. Dubroc, 380 So.2d 672 (La.App. 4th Cir.1980), affirmed, 388 So.2d 377 (La.1980), the Supreme Court stated at page 380:
"... if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable." (Emphasis added)
Additionally, the Supreme Court established in Dubroc that an enforceable agreement by a parent to suspend the right to receive child support payments must meet the requisites for conventional obligation and foster the continued support and upbringing of the child. Although the trial court in the instant case did not make findings of fact or give oral reasons, the trial court stated:
"Gentlemen, there are only a couple of ways this child support can be forgiven, or waived, or relinquished, or whatever. I haven't heard testimony establishing any of them this morning. So the arrearage is fixed in the sum of $3600.00 and judgment is made executory in that amount..."
We agree that the appellant did not carry the burden of proving that an agreement was made with appellee to suspend and/or waive the child support payments due under the judgment of July 2, 1968.
The factual situation presented in the instant case is clearly distinguishable from Seifert, supra and Dubroc, supra. In Seifert, this court held that under certain limited circumstances it was not "contra bonos mores" in Louisiana for a mother to waive child support payments provided in the judgment. In Seifert, the testimony of Mr. Seifert was uncontradicted that there had been an express waiver and release of Mr. Seifert from child support payments. Additionally, there was a written instrument signed by Mrs. Seifert (Howard) expressly releasing Mr. Seifert from any legal responsibility for payment of the child support as provided in the previous court decree.
In Dubroc, the Supreme Court held that a court may enforce an agreement between divorced parents to suspend the mother's right to receive child support payments under a judgment while the father supports and maintains a child in his own home if it promotes the best interest of the child. The Supreme Court distinguished the Halcomb case, supra, which dealt specifically with unilateral action by the husband to reduce his child support payments and held that since the parents duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended, although there is no prohibition against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance, money necessary for the child's maintenance. The court further held that an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. Finally, the court held that if the parties clearly agree to a suspension of the payments and such an agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement is enforceable.
Applying these precepts to the instant case, we cannot say that the trial court was manifestly erroneous in failing to find an agreement to suspend and/or relinquish the child support due in the instant case.
Appellant further contends that the trial court erred in failing to find that plaintiff was estopped from claiming child support arrearages for the period at issue. Appellant contends that as a result of the telephone call from appellee in 1976 stating that her second husband wanted to adopt the children and henceforth she wanted nothing from the defendant but to leave her and the children alone and that his consent thereafter to the adoption, and because the children were enrolled in school *858 under the name of McKee, that he was justified in relying upon these outward indications that the proposed adoption had taken place. As a consequence of the aforesaid, he contends that he did not attempt to seek regular visitation with his children and that plaintiff should be estopped from claiming arrearages and support for the period in question. We find this argument to be without merit. First, we note that the testimony about the proposed adoption and statements in connection therewith, is conflicting. However, even if we accept plaintiff's version, we find no estoppel.
Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who had changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel; (1) a representation by conduct or word; (2) justifiable reliance; and, (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975).
An essential element of estoppel, a change in one's position to his detriment because of reliance, is totally lacking in this case. Appellant contends that he did not attempt to seek visitation with his children since he thought they had been adopted. Appellant is confusing the obligation to support with the right of visitation, two totally separate and distinct legal principles. We fail to see how appellant's legal position changed in any way and this element of estoppel is clearly absent.
In addition to the absence of a change of position, there is also absent a second element of equitable estoppel, namely justifiable reliance. Both appellant and appellee possessed similar knowledge or had access to equal knowledge of the requirements for a legal adoption. Appellant took no steps whatsoever to ascertain whether his children had been adopted or not, now there is no basis for him to now urge "justifiable reliance." Having failed to prove all essential elements of the plea of estoppel, appellant cannot avail himself of that doctrine.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 3538 provides in pertinent part as follows:

"The following actions are prescribed by three years:
That for arrearages of rent charge, annuities and alimony, or of the hire of movables and immovables...."