463 So.2d 755 (1985)
Patricia Crocker LOWE
v.
Claude W. LOWE.
No. 84-CA-240.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1985.
*756 Jamie F. Veverica, Gretna, for Patricia Crocker Lowe plaintiff-appellee.
Floyd J. Reed, Reed & Reed, New Orleans, for Claude W. Lowe defendant-appellant.
Lenon J. Parent, Jr., Gretna, individually and on behalf of the appraisers.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
BOUTALL, Judge.
This case arises from a suit to partition community assets after a divorce. From a judgment of partition both parties have appealed.
Patricia Crocker, now Mrs. Dauzat, and Claude W. Lowe were married in 1960, legally separated in 1978 and divorced on September 6, 1979. The divorce decree incorporated previous judgments that granted custody of the couple's four minor children to the wife and which ordered the husband to pay $250 per month child support, the monthly mortgage notes on the family residence occupied by the wife and children, and school tuition for the children.
Shortly after the divorce, on October 24, 1979, Mr. Lowe petitioned for partition of the community property and appointment of a notary and appraisers to make an inventory.
In March, 1981 a proces verbal of the inventory was filed. Mr. Lowe filed an opposition to homologation or alternatively a rule to amend the inventory, demanding changes in the valuation of certain movable items and the deletion of others on grounds of their being his separate property. He amended his motion to add deletion of a home which he purchased a month before the marriage. Judgment on the rule was signed in June, 1981, deleting the immovable property as separate but homologating the inventory without any other changes.
Claude Lowe filed a motion for new trial, after which, on November 4, 1981, the parties signed a consent judgment incorporating some changes in the movable items and ordering the current family home to be sold *757 at a sheriff's sale. The judgment further recognized Patricia Lowe's interest in annuities, lump-sum payments, or other benefits paid to Claude Lowe by his employer, South Central Bell, accruing in the period of the marriage, June 25, 1960 through August 29, 1977.
Trial of the merits of the partition was held on April 8, 1983. In the course of the hearing the judge and parties referred to two documents, a "Community Property Division Proposal" filed by Mr. Lowe and "Findings of Fact," filed by the notary. At the end of the hearing the court asked counsel for the two parties to submit briefs on the major areas of controversy, the wife's interest in the retirement fund and the husband's entitlement to reimbursement for mortgage payments from date of filing for separation until the judicial sale of the property on August 11, 1982. Neither party filed a brief. The court rendered judgment on June 6, 1983, ordering the following:
1. Mr. Lowe's claim for credit for mortgage payments was denied.
2. Mrs. Lowe's interest in Mr. Lowe's retirement plan was determined to be 17.2 years, with these values:

"Retirement 1992Plaintiff's portion
 of retirement benefit $237.15
"Retirement 1999Plaintiff's portion
 of retirement benefit $235.80
"Retirement 2002Plaintiff's portion
 of retirement benefit $235.06"

3. Mr. Lowe's claim against Mrs. Lowe of $1,897.79 was approved.
4. All other items of the partition were approved and homologated.
5. The notarial fee was set at $7500.00 and that of the appraisers at ½ of 1% each of the gross community inventory of $162,060.61.
6. The proceeds of the judicial sale, minus the notarial fee, the appraiser fees, and the notary's expenses of $80.60 were to be disbursed to the parties "as their interests may appear."
Both parties have appealed the portions of the judgment related to the retirement plan and the notary's and appraisers' fees.
In addition, Claude Lowe assigns the following errors:
1. in regard to the "other items of the partition," a) the credit of $500 to Mr. Lowe to adjust the difference in value of movables in his possession and in Mrs. Lowe's; b) valuation of the Bell System Savings Plan at $1,772.72; and c) the credit to Mr. Lowe of $1,100 for loan repayment to Grace Lowe;
2. failure to credit Mr. Lowe with $29,694.84 for mortgage payments and $728.01 paid in escrow to the homestead.
Patricia Lowe appeals, in addition to the portions relating to the retirement plan and the fees, that provision allowing Mr. Lowe's claim of $1,897.79 against her. She asserts that that amount is due to her as a credit and that she is also due $364.01, representing one-half the escrow payment, or a total claim of $2,261.80.

Notary's and Appraisers' Fees
Both parties urge that the notary's and appraisers' fees are unreasonable and point out that the $7,500 award to the notary is 4½% of the gross value of the inventory, $162,061.61. They argue that because the inventory is comparable to that in Tutorship of Vinall, 441 So.2d 348 (La. App. 5th Cir.1983), similar fees should be set, i.e. $1,620.00 for the notary and $100 for each appraiser. The Vinall case is clearly distinguishable on facts. The only items to be inventoried in that case were five life insurance policies. The notary was required to spend only minimal time and labor, and the appraisers did not work other than signing the inventory. The case at hand required considerably more time and expertise.
Mr. Lowe states that there is no evidence in the record to justify the fee. While no evidentiary hearing was held regarding the work performed, the same judge presided over the bitter struggle between the parties from the beginning and was aware of the effort expended over a three year period. The minute entries, pleadings, and transcripts of hearings contained in the record substantiate the volume of work detailed in the notary's appellate brief. *758 Further, we note that the process verbal of the inventory listed more than fifty items.
Mrs. Lowe argues that the notary duplicated actions taken by her counsel, and that the fee should be lower because the proceeds available from the judicial sale amount to just $18,000. Those arguments have no merit, as the couple had many disputes between them which required the work involved. Had there been no disputes, they would not have had to resort to judicial partition and could have submitted their own proposal of division of their assets and debts.
The Supreme Court in Hill v. Hill, 434 So.2d 1078 (La.1983) affirmed fees set by the trial judge in a partition of community assets and recognized that because the court is authorized to appoint the notary and appraisers and to set their fees, it is constrained to set reasonable fees. The Court said, at 1082:
"... To determine reasonable fees for the notary and appraisers, the court should consider many factors such as (1) the time and labor of the notary and appraisers, (2) the value of the inventory, (3) the number of property items to be inventoried, (4) the fee customarily charged in the locality for similar services, and (5) the experience, reputation and ability of the notary and appraisers."
Bearing in mind the criteria set out in Hill v. Hill, supra, we find no abuse of the trial judge's discretion.

Wife's Interest in Retirement Plan
Both parties argue that the judgment is incorrect in that it places a dollar amount upon the wife's interest in Mr. Lowe's retirement plan. It states that Mr. Lowe's retirement benefits are to be determined by the formula in Sims v. Sims, 358 So.2d 919 (La.1978). The court explained the wife's entitlement in the Sims case as follows, at 924:
"The contractual arrangements between the employer and the employee, by which benefits are not payable under such determinative date, is not altered by the dissolution of the community prior thereto. The community's dissolution before such date does not substitute for the employee's retirement (or separation or death) as the event which fixes the employer's liability and which causes payments to become due. When they do become due, however, so as then to have a determinate value, the non-employed spouse is entitled to receive the proportion of them recognized by this judgment as attributable to the other spouse's employment during the existence of the community."
The formula used is:
 Portion of pension
 attributable to creditable
 service during existence of
 community
 _________________________× 1/2 × annuity or
 Pension attributable to total lump-sum payment
 creditable service
In this case, as in Sims, the amount of the retirement benefit cannot be determined until the employee actually retires. The judgment, as written, is not in accordance with the current law and should be amended to recognize Mrs. Lowe's right to receive her community share of the benefits attributable to 17.2 years in the plan at such time as the money is payable to Mr. Lowe.

Mortgage Payments
Mr. Lowe insists that he should receive full reimbursement for $29,694.84, the total amount he paid on the mortgage notes from the date of filing the petition for separation until the partition sale, plus $728.01 paid into escrow. Mrs. Lowe contends Mr. Lowe is not entitled to reimbursement or rent for the mortgage notes he paid and that she is entitled to one-half of the money paid into escrow, as that was a deficiency which should have been paid on the mortgage notes and was not.
A complicating factor in this issue is that the mortgage payments were included as part of the child support in both the separation and divorce judgments. It is not disputed that the divorce judgment had not been modified prior to trial of the partition. For that reason, the trial judge refused to grant reimbursement even though Mrs. Lowe had remarried in December, 1979 and *759 had lived in the house until June 15, 1982 with her new husband and one of his children along with the four Lowe children. However, at trial the judge said:
"... I intend to allow him rather than mortgage payments, a credit for rent from the time that the former Mrs. Lowe remarried until she left the house, but I have no idea what the rental value of the place is."
The judge did not provide for such an allowance in the judgment of partition.
Counsel for Mr. Lowe states in his brief that:

"Michael v. Michael, 415 So.2d 229 (La.App. 2nd Cir.1982); Lentz v. Lentz, 411 So.2d 59 (La.App. 4th Cir.1982); and Kennedy v. Kennedy, 391 So.2d 1193 (La.App. 4th Cir.1980), writs denied 396 So.2d 883 (La.1981), have all recognized that, following the filing of a petition for separation, or divorce, a spouse may recover all of the money paid on monthly mortgage payments on the community home."
In Lentz v. Lentz, supra, the court held that the paying spouse was entitled to reimbursement from the wife of one-half of the amount of the mortgage payments. The court explained as follows at 61:
"Our long settled jurisprudence is that following termination of the community between a husband and wife the two parties become owners in indivision of the immovable property which had belonged to the community; each owner in indivision is entitled to possess or use the common property without the obligation to pay rent therefor, provided that such possession or use is not to the exclusion of his co-owner; and each co-owner has the obligation to maintain and preserve the property, or vis-a-vis each other, pay his share of the cost thereof.
"In the instant case the property could not have been maintained and preserved without payment of the mortgage principal, interest, taxes and insurance. Without payment of all of these components it could be lost by foreclosure. Accordingly, we hold appellant is entitled to be reimbursed, out of his wife's share of the funds to be distributed, one-half of all the amounts paid by him, with his separate funds, on the mortgage notes, including principal, interest, taxes and insurance...."
In Michael v. Michael, supra, and Kennedy v. Kennedy, supra, the separate estate of the paying spouse was allowed a credit against the community of the full amount spent. See also Gondrella v. Gondrella, 347 So.2d 938 (La.App. 4th Cir.1977).
In the case at hand the wife opposes any reimbursement. She first points out correctly that coowners are not obligated to pay rent if they occupy the common dwelling. See Lentz v. Lentz, supra; Arcement v. Arcement, 162 So.2d 813 (La. App. 4th Cir.1964); Loret v. Fugler, 71 So.2d 384 (La.App. 1st Cir.1954).
The wife urges further that the husband is not entitled to reimbursement because, as held by the court, the separation and divorce judgments required him to make the payments as support. Her counsel does not cite any cases with similar fact situations; however, Cookmeyer v. Cookmeyer, 354 So.2d 686 (La.App. 4th Cir. 1978), does deal with one. In that case, the couple owned a double house. The separation judgment provided that the wife and children would live in one half of the house and the husband would pay the monthly note, thus providing housing. The court of appeal ruled as follows, at 693:
"... [T]he order necessarily envisioned the husband's bearing, as part of alimony and child support, the interest and any tax and insurance components of the monthly mortgage payments (since those items accomplish nothing other than payment, in part, for the use of the double), but not the principal payment. Alimony is not ordinarily intended to provide investment capital for the needy spouse; Naughton v. Naughton, La.App. 4th Cir. 1974, 304 So.2d 679. Accordingly we would allow the husband's claim, but only for the principal of the mortgage debt on the community double paid by him...."
*760 Mr. Lowe made escrow payments for insurance and/or taxes in the amount of $728.01 to the homestead because the monthly notes were insufficient to cover the amount needed. After denying reimbursement for the mortgage payments, the court allowed Mr. Lowe reimbursement for half the escrow, over the objection of the wife's counsel. However the judgment makes no mention of the escrow payment. Counsel for Mr. Lowe demands reimbursement for the full amount.
We believe that this case is governed by the holding in Cookmeyer v. Cookmeyer, supra, and not by the cases cited by the plaintiff. Under that ruling Mr. Lowe should be reimbursed by the community for the amount by which his mortgage payments reduced the principal debt and not for monies expended for insurance, taxes, or maintenance of the house. Neither the husband nor the wife is entitled to credit for the escrow payment.

Other Items of Partition
Community Movables in Mr. Lowe's Possession. Mr. Lowe appeals the adjustment to him for community movables. The record indicates that, referring to the Community Property Proposal, the judge allotted a "round figure credit of $500" to cover the difference in value owed to the husband for community movables after deducting the two automobiles and $750 in gifts to Mrs. Lowe from the listed personal property in possession of the two parties. This item appears essentially correct and we affirm it.
Bell System Savings Plan. Mr. Lowe argues that Mrs. Lowe's share is one-half of $1,312.88 rather than $1,777.72, the figure assigned by the notary. The higher figure resulted from an agreement between the parties to add interest accrued from the date of the inventory to March 9, 1980. Mr. Lowe argues that because he paid community debts with money he would have deposited in the account to earn interest, he is entitled to credit for the accrued interest as an offset. There is no authority for his position and testimony of the notary indicates that the parties stipulated to the higher figure. Accordingly, we find no error in the judge's ruling on this item.
Repayment of Loan to Grace Lowe. Mr. and Mrs. Lowe borrowed $2500 from his mother, Grace Lowe, for the purchase of their house. Mr. Lowe testified that he had paid the balance of the loan, $1800, after the petition for separation was filed, but did not produce a check or receipt in court. The court accepted Mrs. Lowe's testimony that two months after filing the petition she had paid $700 in cash toward the loan to her ex-mother-in-law. She produced a receipt that stated:
"I received $700 from Patricia Lowe, October `77, as payment on the loan."
Thereupon the court reduced the credit to Mr. Lowe to $1,100. Mr. Lowe complains that the receipt, which was not dated or authenticated in any way, is insufficient proof of Mrs. Lowe's payment. As the issue was a credibility call, we find no abuse of discretion in the trial judge's ruling as to this item and affirm.

Claim of Husband Against Wife
The judgment states that:
"... as a result of the findings of fact prepared by the notary and the agreement of the parties, Claude Lowe's claim against Patricia Lowe in the amount of $1,897.79 is approved...."
We have been unable to determine from the record what this amount represented. Mrs. Lowe appeals the award, arguing that the money is due to her rather than to Mr. Lowe. The wife's counsel refers to the credits allowed in the Notary's "Findings of Facts," but the calculations of credits do not come close to the figure $1,897.79. It is possible that the award to Mr. Lowe represented his claim against Mrs. Lowe's separate estate for reimbursement of a federal tax lien of $1,852.80, plus accrued interest. Accordingly, this portion of the judgment requires clarification.
For the reasons stated above, the following disposition of the case is ordered:
*761 1. We affirm the notary's fee of $7,500 and the appraisers' fees of ½ of 1% each of the gross community inventory of $162,060.61.
2. We affirm the accounting of the following items of the partition disputed by Claude Lowe: a) the credit to Claude Lowe of $500 for community movables; b) the valuation of the Bell System Savings Plan; and c) the credit of $700 to Patricia Crocker Lowe for the loan repayment to Grace Lowe.
3. We amend that portion of the judgment related to valuation of Mrs. Lowe's interest in Mr. Lowe's retirement plan to conform with the holding of Sims v. Sims, supra, as follows:
It is Ordered, Adjudged and Decreed that there be judgment in favor of Patricia Crocker Lowe and against Claude W. Lowe to the effect that her interest in the retirement plan administered by the Bell System Pension Plan shall be calculated, at the time the benefits become due and payable, according to the following formula:
 Portion of pension
 attributable to creditable
 service during existence of
 community (17.2 years)
 ________________________× 1/2 × annuity or
 Pension attributable to total lump-sum payment
 creditable service
4. We reverse that portion of the judgment denying and dismissing Mr. Lowe's claim for reimbursement of mortgage payments made between August 29, 1977 and September 16, 1982 and award reimbursement to Mr. Lowe against the community assets in the amount by which the mortgage payments made between August 29, 1977 and September 16, 1982 reduced the principal debt, and we remand for calculation of same.
5. We remand for the purpose of clarification of the accounting in respect to Mr. Lowe's claim against Mrs. Lowe of $1,897.79.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND REMANDED.