583 So.2d 854 (1991)
David Edwin LARSEN
v.
Patricia McDonough LARSEN.
No. 90 CA 0524.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*855 David L. Dawson, Jr., Baton Rouge, for plaintiff-appellant David Edwin Larsen.
Marsha Wade, Baton Rouge, for defendant-appellee Patricia M. Larsen.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
This case involves a partition of community property. Plaintiff, David E. Larsen, sought to divide the community property acquired during his marriage to defendant, Patricia McDonough Larsen.
The trial judge decided the matter with written reasons for judgment based on a written stipulation of facts submitted by the parties.[1] From the trial judge's judgment, plaintiff appeals, urging the following three assignments of error:
1. The trial judge erred in giving defendant credit for the entire amount of the mortgage notes paid by plaintiff after the divorce and in not allocating the payments equally to both parties, or in the alternative, in not giving defendant credit for only one-half of the reduction in the principal balance of the mortgage.
2. The trial judge erred in awarding defendant one-half of the non-vested amount in the Thrift fund plaintiff had maintained with his former employer.
3. The trial judge erred in awarding defendant an interest in the annuity plan offered by plaintiff's former employer after the community had terminated.

ASSIGNMENT OF ERROR NO. 1: CREDIT FOR MORTGAGE PAYMENTS
Plaintiff contends that the trial judge erred in finding that defendant could take credit for the entire house note payments made after the divorce. The facts regarding this matter were as follows. When the parties separated, a judgment on rules rendered January 2, 1985 provided that defendant was awarded the use of the matrimonial domicile; that plaintiff pay $150.00 per month as alimony pendente lite and child support; and that plaintiff pay the mortgage note. On March 11, 1985, a judgment of separation was signed whereby both parties were found at fault; defendant continued to have the use of the matrimonial domicile and to be the primary custodian of the children; plaintiff was ordered to pay $400.00 per month as child support; and plaintiff was ordered to pay the mortgage note "with the provision that neither party shall claim a credit at the time of partition of community assets for said payments."
On December 2, 1985, a judgment of divorce was rendered; according to the judgment, "all previous orders and decrees relating to custody, child support, injunctive reliefs and the use of the matrimonial domicile remain in full force and effect pending the hearing scheduled for December *856 17, 1985." A minute entry on January 23, 1986 stated that defendant should be primary custodian of the children and should have use of the former matrimonial domicile; plaintiff was ordered to pay $1,000.00 per month in child support. On February 19, 1986, the court on its own motion amended the minute entry to order defendant to pay the house note. No mention was made of credits. On March 13, 1986, a judgment was signed which provided that plaintiff would pay $1,000.00 per month, "out of which sum PATRICIA MCDONOUGH LARSEN is to pay the house note and mortgage indebtedness affecting the former matrimonial domicile of which she has been given use of." Unlike the earlier minute entry, the judgment did not classify the $1,000.00 as child support. The judgment also did not mention any credits. When defendant failed to pay the house notes, plaintiff began paying them and subtracted that amount from the $1,000.00 per month he paid to defendant.
Plaintiff contends that payment of the house note was always a part of the child support or alimony obligation. Based on this contention, plaintiff argues that the part of the separation judgment decreeing that neither party would obtain credit for payment of the mortgage note when the community was partitioned remained in effect even though the divorce judgment was silent as to credits. Plaintiff contends that because the house note payment was part of the child support, it was not incidental to the separation and therefore did not terminate with the separation judgment.[2] However in this case, we find that based on the judgment of separation, the house note was not part of child support at the time of that judgment. Freeman v. Freeman, 552 So.2d 636 (La.App. 2d Cir.1989); Dupre v. Dupre, 522 So.2d 694 (La.App. 5th Cir.), writ denied, 523 So.2d 1341 (La.1988). Therefore, we find that the provision in the separation judgment regarding credits terminated when the divorce judgment was rendered and was silent as to credits. See Walters v. Walters, 540 So.2d 1026, 1028 (La.App. 2d Cir.1989). In this respect, we agree with the trial judge's finding that the fact that no mention was made in the divorce judgment regarding credits was intentional and that the separation judgment provision regarding credits was no longer in effect.
Plaintiff further contends in the alternative that the trial judge erred in awarding defendant a credit for the full amount of the mortgage payments made after the judgment of divorce. Plaintiff contends that defendant is only entitled to credit for the reduction in the amount of the principal balance on the mortgage due to those specific mortgage payments, based on Lowe v. Lowe, 463 So.2d 755 (La.App. 5th Cir.1985).
In upholding defendant's claim for reimbursement, the trial judge found that plaintiff was paying the house note with defendant's money. Child support payments are considered the property of the spouse to whom paid. McManus v. McManus, 428 So.2d 854, 856 (La.App. 1st Cir.1983). Thus, defendant would be entitled to reimbursement because as the trial judge reasoned, plaintiff was paying the house payments (a community obligation) with defendant's money (her separate property). We find that the house payments were a part of plaintiff's child support obligation. The minute entry for the divorce judgment did expressly provide that the house payments were to come from the child support payments, although the divorce judgment did not classify the $1,000.00 as child support. However, in addition to representing child support, the *857 house note payment also represented a community obligation on a major community asset, which is entirely separate from child support, an obligation based on the needs of the child and the financial ability of the parent. LSA-C.C. art. 227.
In urging that defendant is not entitled to credit for the entire house payments, plaintiff cites Lowe v. Lowe, 463 So.2d 755 (La.App. 5th Cir.1985) and Lovell v. Lovell, 490 So.2d 330, 332 (La.App. 1st Cir.), writ denied, 495 So.2d 302 (La.1986). In Lowe, the separation and divorce judgments required Mr. Lowe to make the house payments as support. The Fifth Circuit relied on Cookmeyer v. Cookmeyer, 354 So.2d 686 (La.App. 4th Cir.1978), which had stated that "[T]he order necessarily envisioned the husband's bearing, as part of alimony and child support, the interest and any tax and insurance components of the monthly mortgage payments (since those items accomplish nothing other than payment, in part, for the use of the double), but not the principal payment. Alimony is not ordinarily intended to provide investment capital for the needy spouse; [sic] Accordingly we would allow the husband's claim [for reimbursement of the house payments], but only for the principal of the mortgage debt on the community double paid by him...." 354 So.2d at 693 (Citation omitted). In Lovell, following Lowe and Cookmeyer, we held that a spouse was entitled to credit only for the amount by which the principal balance of community loans was reduced by payments from his separate funds in that payment of the loans was made part of his alimony obligation. Lovell, 490 So.2d at 332.
This case is distinguishable from Lowe and Lovell because in those cases the spouses were obligated to pay the house notes themselves and were doing so directly out of their fundstheir separate property. In this case, plaintiff was ordered to pay defendant $1,000.00 as child support, out of which she was to pay the house note. Thus, the house note payments would come from her separate property. Clearly, under Lovell and Lowe, if plaintiff had been ordered to pay the house note directly as part of his child support obligation, he would only be entitled to reimbursement for the amount by which the principal balance of the mortgage was reduced. We find that the same should be true where defendant was to pay the house note, since the payment represented part of plaintiff's child support obligation. As in Lowe and Lovell, plaintiff would not be entitled to a credit for the amount which was part of child support, but only for the amount by which the principal balance of the community obligation was reduced. Therefore, we reverse that portion of the judgment giving defendant credit for the entire house payments and award defendant credit for the amount by which the mortgage payments reduced the principal debt, and we remand for calculation of this amount.

ASSIGNMENT OF ERROR NO. 2: NON-VESTED PORTION OF THRIFT FUND
Plaintiff contends that the trial judge erred in awarding defendant one-half of the portion of his Thrift fund which had not vested when the community terminated.
According to the stipulation, plaintiff and defendant married in 1977 and plaintiff began employment with Exxon on March 30, 1981. Plaintiff entered Exxon's Thrift program on September 16, 1982. Plaintiff became vested with the Thrift program on March 30, 1986, and plaintiff terminated his employment with Exxon on September 11, 1987. When the suit for separation was filed on November 15, 1984, $4,164.44 represented vested employee contributions in the Thrift program and $4,611.51 represented non-vested company contributions.
The trial judge found that the entire amount of the Thrift fund was community property, relying on Lovell v. Lovell, 490 So.2d at 330 and T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1975).
We agree with the trial judge's finding. In a recent well-written case decided by this court, Camp v. Camp, 580 So.2d 553 (La.App. 1st Cir.1991), we held the non-vested portion of a husband's shares in his employer's money purchase and stock ownership *858 plan which was attributable to contributions made during the marriage was community property. As in this case, only the classification of the non-vested shares was at issue since the parties had agreed that the shares which were vested when the community was terminated were community property. This court relied on T.L. James, 332 So.2d at 851-852, Breaux v. Breaux, 555 So.2d 1001 (La.App. 3d Cir. 1990), and Little v. Little, 513 So.2d 464 (La.App. 2d Cir.1987), in reaching our holding. We reasoned that although the contractual right to receive the non-vested shares was due in the future and contingent upon continued employment by the husband, the property right to ultimately share in the plan's shares was acquired during the marriage, making the non-vested shares a community asset. We find that Camp controls in this case because the property right to ultimately receive proceeds from the Thrift fund was acquired during the marriage; the trial judge correctly awarded defendant one-half of the non-vested portion of plaintiff's Thrift fund.[3] This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 3: ANNUITY
Assignment of Error No. 3 concerns an annuity; we find that we cannot decide it because the record does not contain enough evidence. As earlier stated, the stipulation contains the facts that plaintiff began employment with Exxon on March 30, 1981, and terminated his employment on September 11, 1987. As to the annuity specifically, the stipulation only states "7) On the date the parties filed for separation [November 15, 1984], David E. Larsen had no vested right in the Exxon Annuity Plan, it not coming into existence until 1986."
Relying on Lovell and T.L. James, the trial judge found that the annuity plan was community property. Based on our preceding discussion of Camp v. Camp, we find that defendant is entitled to one-half of the proceeds from the annuity insofar as they are attributable to plaintiff's employment during the existence of the community, although the proceeds are not payable until after the termination of the community. See also Johnson v. Johnson, 532 So.2d 503, 505 (La.App. 1st Cir.1988) where this court held that plaintiff's disability retirement benefits, based on a non-work-related disability, were community property because the right to receive benefits was based on plaintiff's contributions to the pension fund from community earnings and his years of employment during the community. In this case, we cannot determine from the stipulation whether the proceeds from the annuity are attributable to plaintiff's employment during the existence of the community.[4]
According to LSA-C.C.P. art. 2164, an appellate court may render any judgment which is just, legal, and proper. "Although the law favors prompt disposition of cases and avoidance of protracted litigation, an appellate court is empowered to remand the case for the trial judge to make credibility determinations of conflicting expert witnesses or for introduction of additional evidence to prevent a miscarriage of justice." Watts v. Watts, 552 So.2d 738, 741 (La.App. 1st Cir.1989) (Citations omitted). Therefore, we remand this matter for further proceedings as to the characterization of the annuity through introduction of additional stipulations or evidence or testimony.
*859 For these reasons, that portion of the trial court's judgment of partition dealing with the Thrift plan is affirmed. The portions of the judgment dealing with the credits for mortgage payment and the annuity are reversed and the matter is remanded for further proceedings consistent with the views we have expressed in this opinion. Costs are to await a final determination of this matter.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] The stipulation of facts with its attachments is in the record before this court, but is marked "NOT FILED" in the chronological index of pleadings, and does not contain any endorsement of filing. If the stipulation is not part of the record, this court cannot consider it. Franklin v. City of Baton Rouge, 525 So.2d 674 (La. App. 1st Cir.1988). However, the minute entry for Thursday, May 11, 1989, states, "This matter came before the court for trial pursuant to previous assignment. By consent of Court and Counsel, stipulations as to the assets of the community were filed." Formal minutes of a court are presumed correct, absent positive proof to the contrary. Preuett v. Preuett, 517 So.2d 848 (La.App. 3d Cir.1987). Additionally, the trial judge in his written reasons for judgment stated that the stipulation was entered into the record. This case is distinguishable from Franklin, where the record contained no stipulation of fact and the minute entry did not indicate that any stipulation was introduced. Franklin, 525 So.2d at 675. Therefore, we will consider the stipulation of facts.
[2] Plaintiff cites three cases in support of this argument. Lewis v. Lewis, 404 So.2d 1230 (La. 1981); Dunn v. Dunn, 546 So.2d 819 (La.App. 5th Cir.1989); and Walters v. Walters, 540 So.2d 1026 (La.App. 2d Cir.1989). These cases do support the proposition that orders in separation judgments which enforce obligations that exist independently of the marriage (such as child support) do not terminate when they are omitted from the divorce judgment; however, we find the Lewis and Dunn cases factually distinguishable from our case and the Walters case, where the court held an order prohibiting harassment in the separation judgment incidental to the marriage such that the divorce judgment's omission of this order terminated it, factually similar to our case.
[3] Plaintiff cites Moreau v. Moreau, 457 So.2d 1285 (La.App. 3d Cir.1984) in support of his contention that the non-vested portion of the Thrift fund is not community property. Plaintiff quotes a statement from Moreau: "vested retirement benefits, attributable to employment during marriage, constitute a community asset..." Moreau, 457 So.2d at 1285. While this statement is correct, Moreau did not involve the issue of non-vested benefits; in Moreau, the husband had been retired for about fourteen years when the community terminated, and thus all his retirement benefits were vested. The issue in Moreau was whether Louisiana law applied to these retirement benefits. Thus, plaintiff's reliance on Moreau to support his contention is misplaced.
[4] We cannot avail ourselves of the presumption of community set forth under LSA-C.C. art. 2340 that property in the possession of a spouse during the community is presumed to be community property because the annuity came into existence after the community terminated.