580 So.2d 553 (1991)
Patricia Byrd CAMP LeBLANC, JJ.
v.
John Bliss CAMP.
No. CA 90 0326.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Donna L. Wright, Alex Wall, Jr., Baton Rouge, for plaintiff-appellee Patricia B. Camp.
Mary Olive Pierson, Baton Rouge, for defendant-appellant John B. Camp.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiff, Patricia Byrd Camp, filed suit against defendant, John Bliss Camp, seeking partition of the community property that was acquired during their marriage. Prior to trial the parties resolved all matters pertaining to the partition except for the community's interest in a money purchase plan and a stock ownership plan (collectively referred to by the parties as ESOP) in which Mr. Camp participated as a result of his employment with Louisiana Television Broadcasting Corporation (LTB).
The parties stipulated that during the marriage, a contract was executed in which they agreed that they would share in the assets and liabilities of the community in the proportion of two-thirds (2/3) to Mrs. Camp and one-third (1/3) to Mr. Camp. Although the community was dissolved during the middle of March 1986, the parties agreed to use the date of March 31, 1986 as the dissolution date of the community for purposes of determining the community interest in the ESOP.
During trial, the parties introduced a joint exhibit which provided a schedule of ESOP contributions and vesting for the account of John Camp. As of March 31, 1986, a total of 282.9828 shares had been contributed to Mr. Camp's account by LTB and thirty percent (30%) (or 84.8948 shares) of these 282.9828 shares[1] were vested. During March of 1987, 1988, and 1989, additional shares were contributed to the ESOP and each year Mr. Camp's vested shares increased according to a vesting schedule.[2] Mr. Camp eventually became one-hundred percent (100%) vested in the ESOP on July 26, 1989, prior to the end of his employment with LTB.
*554 Both parties agree that the ESOP shares which were vested on March 31, 1986 (the 84.8948 shares) are community property. The parties also agree that the shares that were contributed to the ESOP during 1987, 1988, and 1989 are Mr. Camp's separate property. The dispute in this matter is whether the shares that had been contributed into the plan as of March 31, 1986, but were not vested at that time (198.0880 shares), are community property.
In oral reasons for judgment, the trial court determined that all of the 282.9828 shares which had been contributed to the ESOP as of March 31, 1986, were community property. Thus, the court found that Mrs. Camp was entitled to 188.6552 shares (two-thirds of the 282.9828 shares), according to the terms of the marital agreement executed by the parties. However, the trial court rendered a written judgment in Mrs. Camp's favor, awarding to her ownership of two-thirds (2/3) of 188.9825 shares[3] of stock in the money purchase and stock ownership plans. Defendant appealed the trial court's judgment. Plaintiff neither appealed nor answered defendant's appeal.
Defendant's sole assignment of error is the trial court erred in awarding Mrs. Camp an interest in the shares of stock that had been contributed into the plan as of March 31, 1986, but were not vested at that time.
In T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), on rehearing, 332 So.2d 849 (La.1976), an employer provoked a concursus proceeding for distribution of proceeds from an employee's profit-sharing and retirement plans. Claimants to the funds involved in these plans were the employee's widow, the employee's former wife and his two sons. Contributions to the plans had been made by the employer during the employee's first marriage, during a period of time when the employee was divorced and not yet remarried, and during the employee's second marriage.
In determining how the funds of the plans should be disbursed among the claimants, the Court stated as follows:
Each contribution of the employer to the funds entitles the employee or his beneficiary to share subsequently in the funds' proceeds; when made during the community, the property right to share ultimately in the proceeds thereby acquired by the wage earner, is "acquire[d] during the marriage", Civil Code Article 2402 and is thus a community asset. Civil Code Article 2334; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956). Therefore, the value of the right to share proportionately in the fund, which right is contractually acquired by virtue of each contribution, falls into the community during which the contribution is made; for by each contribution, when made, the employee (or his beneficiary or estate) has acquired a right to share pro rata in the proceeds ultimately payable from the funds to the employee or his contractual beneficiary or his estate.
... The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of a marriage, the right-to-share is a community asset which, at the dissolution of the community, must be so classified  even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 174-75 (1956). When a community is dissolved, the employee's spouse is thus entitled *555 to be recognized as the owner of one-half the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community (i.e., even though it may not by the contract be payable at that time) .... However, when the proceeds do become payable under the contract to the employee or his beneficiary or estate, the spouse is entitled at that time to receive payment as owner of her share of the proceeds, based upon the value of the right-to-share acquired during the community formerly existing between her and the wage earner.
. . . . .
The value of each contribution paid into the fund shall be a share of the fund of the same proportion that the contribution's amount bears to the total amount of all contributions paid into the fund to the employee's account.
332 So.2d at 851-852.
Footnotes and citations omitted.
The Supreme Court remanded the matter for the district court to apportion the funds on deposit to the claimants in accordance with the above-stated principles.
Although the employee's benefit plans in T.L. James were subject to a schedule of vesting, the Court made no reference to this schedule of vesting when directing how the benefits were to be apportioned between the claimants. See LeVan, Allocating Deferred Compensation in Louisiana, 38 La.L.Rev. 35, 37-40 (1977). Thus, as noted by LeVan, the "contributions made before vesting commenced, after vesting was completed, or in between, were given the same relative weight." 38 La.L. Rev. at 40.
By implication, T.L. James provides support for the classification of unvested benefits (contributions) as community property. Additional support for this classification is found in Breaux v. Breaux, 555 So.2d 1001 (La.App.3d Cir.1990), wherein the court held that the wife was entitled to one-half the proceeds from the husband's pension attributable to the husband's employment during the existence of the community, where the pension came into existence prior to the marriage and the husband did not become vested in the pension until after termination of the community. Also see, Little v. Little, 513 So.2d 464 (La.App.2d Cir.1987), which held that the wife was entitled to a portion of the husband's military retirement benefits, based upon the husband's military service for several years during which the community was in existence, even though the husband's right to benefits had neither vested nor matured at the time of divorce.
Accordingly, in the present case, we find that the total sum of shares that was contributed to the ESOP as of March 31, 1986, whether vested or unvested, is community property. Each contribution by LTB to the ESOP entitled Mr. Camp to share subsequently in the plan benefits. Since the property right to share ultimately in the 282.9828 shares was acquired by Mr. Camp during the marriage, it is properly classified as a community asset, even though the contractual right to receive these shares was due in the future and contingent upon continued employment by Mr. Camp. T.L. James, 332 So.2d at 851. Since Mr. Camp has become one hundred percent (100%) vested in the ESOP and has terminated his employment with LTB, Mrs. Camp is entitled to two-thirds (2/3) of the shares that had been contributed to the ESOP at the time of dissolution of the community.
Although the trial court's judgment does not award to Mrs. Camp the full amount of shares to which she is entitled, we cannot amend the judgment in Mrs. Camp's favor since she has neither appealed the judgment nor answered defendant's appeal. See Knect v. Board of Trustees, 577 So.2d 730 (La.App. 1st Cir.1991). Accordingly, we affirm the trial court's judgment. All costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.
NOTES
[1] This reference and later references to numbers of shares in the ESOP represents the total number of shares in the money purchase plan and the stock ownership plan. The particular amount of shares that was contributed to each of these plans is not significant for purposes of this appeal.
[2] The original vesting schedule provided for vesting at the rate of ten percent (10%) each year. Changes in federal law mandated a new vesting schedule pursuant to which Mr. Camp became one-hundred percent (100%) vested in the ESOP based on a seven year schedule.
[3] Where there is a conflict between a judgment and written reasons for judgment, the judgment prevails. Thurman v. Thurman, 521 So.2d 579 (La.App. 1st Cir.1988).

Appellee's counsel asserts in brief that this inconsistency between the oral reasons for judgment and the written judgment resulted from her error in preparation of the judgment. During oral argument, counsel for appellee stated that she had attempted to have the trial court correct the error in the judgment (after defendant appealed the judgment) but the trial court declined to do so, stating that it no longer had jurisdiction over the matter.