779 So.2d 939 (2000)
Stephen A. HANSEL
v.
Sarah HOLYFIELD, Wife of Stephen A. Hansel.
No. 2000-CA-0062.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 2000.
Writs Denied April 12, 2001.
*941 Edith H. Morris, Law Office of Edith H. Morris, New Orleans, LA, and Suzette Marie Smith, Metairie, LA, and Ira Middleberg, Ernestine Anderson-Trahan, Middleberg, Riddle & Gianna, New Orleans, LA, Attorneys for Plaintiff/Appellant.
Shelly Hammond Provosty, Montgomery, Barnett, Brown, Read, Hammond & *942 Mintz, L.L.P., New Orleans, LA, and Michael A. McNulty, Jr., McNulty & O'Connor, New Orleans, LA, and Gwendolyn Hanhart, Ladouceur & Ladouceur, New Orleans, LA, Attorneys for Defendant/Appellee.
Court composed of Judge ARMSTRONG, Judge McKAY, Judge CIACCIO, Pro Tempore.
McKAY, Judge.
Stephen Arthur Hansel and Sarah Holyfield Hansel were married in Florida on November 16, 1985. At the time of the marriage, both Mr. and Mrs. Hansel were employed by Barnett Bank in Jacksonville, Florida. Mrs. Hansel left her employment with Barnett the year following the marriage in order to stay home and help raise Mr. Hansel's children from a previous marriage.[1]
In January of 1992, Barnett terminated Mr. Hansel's employment. Shortly thereafter, Mr. Hansel went through the interview process with Hibernia Bank in New Orleans and was subsequently hired. On March 25, 1992, Mr. Hansel moved to New Orleans and on March 26, 1992, he began his employment as Hibernia's president and chief executive officer. Mrs. Hansel did not move to New Orleans until the summer of 1992, so that one of Mr. Hansel's children from his prior marriage could finish school in Jacksonville. Upon Mrs. Hansel's move to New Orleans, the couple purchased a residence at 1907 Palmer Avenue.
In November of 1996, Mr. Hansel decided that he wanted to leave the marriage and he moved out of the Palmer Avenue residence. On November 7, 1996, Mr. Hansel filed for divorce which the trial court granted in June of 1997. Later, Mrs. Hansel filed a petition to partition the community property. During the Hansels' eleven year marriage, they amassed a considerable amount of property; this included stock in and stock options for both Barnett and Hibernia banks as well as the family home at 1907 Palmer Avenue. The partition trial took place over nine days from April 13, 1998 to May 11, 1998. On June 16, 1998, the matter was submitted on post-trial memoranda by counsel for the parties. The trial court rendered its judgment along with incorporated reasons for judgment on January 25, 1999. The trial court found that the legal regime of acquets and gains between the Hansels existed from March 25, 1992 until its termination on November 7, 1996. The trial court further found that the Hansels' community was worth $31,758,051.00. The trial court allocated community assets worth $25,673,272[2] to Mr. Hansel and allocated community assets worth $5,135,856 to Mrs. Hansel. The trial court then offset each party's claims for reimbursement, determining that Mr. Hansel was due $909,672, and found that an equalizing payment of $9,359,036 was due Mrs. Hansel. Mr. Hansel appeals this judgment and raises eleven assignments of error. Mrs. Hansel answered the appeal and raises thirteen assignments of error.

DISCUSSION
On appeal, Mr. Hansel raises the following assignments of error: 1) the trial court erred in exceeding the maximum delay for rendering judgment in a case taken under advisement; 2) the trial court erred in valuing the Hibernia stock options based on values over nine months old by the time it rendered judgment and in refusing to grant a new trial to allow the introduction of newly discovered evidence (namely, the substantial decrease in the value of the Hibernia stock and Hibernia stock options between the time of trial and rendition of judgment; 3) the trial court erred in failing to consider the income taxes that must be paid for the Hibernia stock options to *943 be exercised; 4) given the change in the stock price and the trial court's refusal to consider the acquisition costs of taxes, it erred in allocating all of the Hibernia stock options to Mr. Hansel, while Mrs. Hansel received approximately six million dollars in community assets plus a $9,358,036 cash equalizing payment from Mr. Hansel because that created a totally inequitable division of the community; 5) the trial court erred in determining that the Hibernia stock options were earned over time rather than on the date upon which they vested; 6) the trial court erred in determining that the Hansel's community of acquets and gains was established in March of 1992 before both spouses had moved to Louisiana; 7) the trial court erred in valuing 1907 Palmer Avenue as of the trial date when that date was not reasonably proximate to the allocation of the assets and liabilities of the former community; 8) the trial court erred in valuing and allocating community assets (71,640 Hibernia Incentive Stock Options) which had already been judicially partitioned with the consent of the parties; 9) the trial court erred in failing to consider the strike price (the price per share which must be paid to exercise the option) in its valuation of the 25,672 unvested Hibernia Stock Options; 10) the trial court erred in its computation of the value of the Barnett Bank/Nations Bank stock; and 11) the trial court erred in determining that Mr. Hansel owed Mrs Hansel an equalizing cash payment of $9,359,036.
In her answer to the appeal, Mrs. Hansel raises the following specifications of error: 1) the trial court erred in failing to find all the Barnett Bank stock at issue as community property; 2) alternatively, the trial court erred in failing to award a reimbursement claim in favor of Mrs. Hansel for one-half of the community funds used to purchase the Barnett Bank stock, in light of the finding that part of the stock was the separate property of Mr. Hansel; 3) the trial court erred in allocating the Barnett Bank stock to Mrs. Hansel without requiring Mr. Hansel to withdraw the stock from pledge of a separate debt; 4) the trial court erred in failing to find all of the Hibernia stock options granted during the community as community property; 5) alternatively, the trial court erred in computing the formula that it used to pro-rate the Hibernia stock options into community and separate property; 6) the trial court erred in failing to find the 1997 Hibernia stock option grant to be community property; 7) the trial court erred in failing to accept the testimony of Ron Christner regarding the Black-Sholes method in valuing the unvested stock options; 8) the trial court erred in applying a twenty-three percent (23%) discount factor instead of a ten percent (10%) discount factor in its valuation of the restricted Hibernia stock; 9) the trial court erred in failing to award legal interest in favor of Mrs. Hansel on the equalizing payment from the date of judgment; 10) the trial court erred in the award of the reimbursement claim in favor of Mr. Hansel re: Scott Mill Road property; 11) the trial court erred in failing to secure the equalizing payment awarded to Mrs. Hansel with community assets allocated to Mr. Hansel and/or separate assets of Mr. Hansel; 12) the trial court erred in the award of the reimbursement claim in favor of Mr. Hansel re: expenditures on the Amelia Island property; and 13) the trial court erred in the amount awarded to Mrs. Hansel for reimbursement for dividends paid on Barnett Bank stock.

APPELLANT'S ASSIGNMENT OF ERROR No. 1
Although La. R.S. 13:4207 provides that a trial court shall render judgment on a case within thirty days of its submission, the failure of the trial judge to render judgment within that time frame does not make the judgment invalid. Dragon v. Schultz, 97-664 (La.App. 5 Cir. 1/14/98), 707 So.2d 1274. The instant case is quite complex because of the nature of some of the community assets involved. The trial court took its time and rendered a very thoughtful judgment, as evidenced by its detailed reasons for judgment. In *944 this situation, the trial court's delay in rendering judgment was not unreasonable. Accordingly, we find no merit in this assignment of error.

APPELLANT'S ASSIGNMENT OF ERROR No. 2
Under La. C.C.P. art. 1972(2), a party is entitled to a new trial if the party has discovered new evidence that he could not have obtained before trial. In the instant case, Mr. Hansel filed his motion for a new trial, seeking re-valuation of the Hibernia stock and stock options because the price of the stock decreased after trial. This does not qualify as new evidence under La. C.C.P. art. 1972(2). "Newly discovered evidence" has been held to be evidence which existed at the time of trial, but was only discovered after the conclusion of the trial. Williams v. Liberty Mutual Ins. Co., 327 So.2d 462 (La.App. 3 Cir.1976). Clearly the decreased stock prices were a later development and did not exist at the time of trial. Furthermore, La. R.S. 9:2801(4)(a) provides that the "court shall value the assets at the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties." Accordingly, the trial court did not err in refusing to grant Mr. Hansel a new trial.

APPELLANT'S ASSIGNMENT OF ERROR No. 3
The trial court refused to consider the income taxes which must be paid when the Hibernia stock options are exercised. Mr. Hansel contends that it is inequitable to value the stock without taking into account the tax liability. We agree.
At some point, Mr. Hansel will have to exercise each stock option grant or he will lose the right to do so. When Mr. Hansel exercises a stock option grant, any amount over the exercise price which Mr. Hansel receives for the stock will be recognized as ordinary income for tax purposes. As ordinary income the money which Mr. Hansel receives is subject to state and federal income taxes. The trial court disallowed tax consequences not because it found the exercise of the options or the imposition of the taxes to be speculative, but, rather, because it found the amount of taxes to be speculative. However, at trial, Mr. Hansel submitted evidence that he is subject to the maximum applicable tax rate (39.5% in federal taxes and 6% in state taxes). Although it is possible that Mr. Hansel may be taxed at a lower rate, the rate of taxation is no more speculative than the value of the stock options themselves. Recognizing the speculative value of a stock option but refusing to recognize the speculative rate of taxation on the value of those options is simply inequitable. Accordingly, the trial court erred in failing to consider the income taxes which must be paid when the Hibernia stock options are exercised. We look to the date of trial to determine what the tax liability would have been had all the options been exercised at that time and give Mr. Hansel the appropriate tax credit.

APPELLANT'S ASSIGNMENT OF ERROR No. 4
Mr. Hansel now argues that the allocation of the community assets was inequitable and contrary to La. R.S. 9:2801 because the trial court failed to consider the tax consequences and the updated value of the options when valuing them. As stated above we agree with Mr. Hansel in so far as the tax consequences are concerned. However, we disagree with his contention that the updated value of the options should be considered in valuing them. As we stated above, La. R.S. 9:2801(4)(a) provides that the "court shall value the assets at the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties." There are no cases in Louisiana where the trial court or appellate court valued community assets later than the date of the trial. Furthermore, although Mr. Hansel now complains about being allocated all of the Hibernia stock options, the fact remains that he requested that they be allocated to *945 him and his request for them was "more than just an economic matter." He testified that their ownership also affected his ability to do his job. Based on the law as well as Mr. Hansel's own desires, the trial court did not err in allocating all of the Hibernia stock options to Mr. Hansel. The trial court's only error was in not giving Mr. Hansel credit for the tax consequences he would ultimately incur.

APPELLANT'S ASSIGNMENT OF ERROR No. 5
With regards to the Hibernia stock options that had not vested before the termination of the community, Mr. Hansel argued that theses options should be deemed to be his separate property or at least pro-rated while Mrs. Hansel argued that they should be treated as community property. Therefore, the appropriate inquiry is whether the Hibernia stock options were property rights either acquired by Mr. Hansel during the community or acquired by him as a result of his effort, skill and industry during the community. The trial court found that the stock options granted to Mr. Hansel served a dual purpose of rewarding him for past service and as an incentive for future performance. Based on this, the trial court ruled that the options should be pro-rated based on the amount of time between the grant date and the vesting date that took place during the community. This is in accordance with the principle that the determinative factor is whether work performed during the existence of the community was taken into consideration in granting the option. Goodwyne v. Goodwyne, 94-0079 (La.App. 4 Cir. 6/30/94) 639 So.2d 1210, writ denied, 94-2035 (La.11/4/94) 645 So.2d 211. Accordingly, we find no error in the trial court's pro-rating the stock options.

APPELLANT'S ASSIGNMENT OF ERROR No. 6
Mr. Hansel contends that the trial court erred in determining that his and Mrs. Hansel's community regime commenced in March of 1992 rather than in August of 1992. According to Louisiana Civil Code article 2334: "The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage." Furthermore, the revision comments to this article state that "spouses not domiciled in Louisiana at the time of their marriage become subject to the provisions of this Title from the moment they become Louisiana domiciliaries."[3]
Domicile is an issue of fact to be determined on a case-by-case basis inquiry. Pattan v. Fields, 95-1936 (La.App. 1 Cir. 9/26/95), 669 So.2d 1233. In establishing domicile, intent is based on actual facts and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842 (La.App. 1 Cir.1992). In the instant case, the entire Hansel family resided in Florida until March 25, 1992. At that time, Mr. Hansel moved to New Orleans to become the president and chief executive officer of Hibernia. However, Mrs. Hansel remained in Florida until that summer so that Mr. Hansel's daughter from his prior marriage might finish her senior year in high school. It was always the Hansels' intention that the entire family would move to Louisiana. For practical reasons it was impossible for the entire family to physically move to Louisiana on March 25, 1992. While it may be assumed that Mrs. Hansel was left to tend to the family's unfinished business in Florida, it may equally be assumed that Mr. Hansel was establishing the family in Louisiana. In any event, Mrs. Hansel did physically move to Louisiana as soon as was practical. When these facts are considered in conjunction with the state's public policy that creates the strong presumption in favor of a community property regime, it is our opinion that the trial court did not err in determining that the *946 community regime began at the time Mr. Hansel moved to Louisiana.

APPELLANT'S ASSIGNMENT OF ERROR No. 7
The trial court valued the community residence at 1907 Palmer Avenue at $1,100,000 based on the inspection of Mrs. Hansel's expert. The trial court relied on Mrs. Hansel's expert's inspection rather than Mr. Hansel's expert's inspection because Mrs. Hansel's expert's inspection was more recent in time. Mr. Hansel contends that the trial court violated La. R.S. 9:2801(4)(b) because its valuation of the community residence was based on appraisals that were eight and ten months old by the time the trial court rendered its judgment. Clearly, this assignment of error is without merit. The appellant's complaints concerning the trial court's delay in rendering judgment are not reversible error for the same reasons stated earlier in this opinion. Furthermore, the trial court's reliance on one expert's valuation instead of another's is clearly a finding of fact which is entitled to great deference.

APPELLANT'S ASSIGNMENT OF ERROR No. 8
Mr. Hansel contends the trial court erred in valuing and allocating 71,640 Hibernia incentive stock options. Mrs. Hansel does not dispute that there had already been a partial partition of the 71,640 Hibernia incentive stock options prior to judgment being rendered. Therefore, these options, which the trial court valued at $1,182,060.00, should not have been have been included in the judgment. Accordingly, $591,030.00 should be deducted from the equalizing payment to Mrs. Hansel.

APPELLANT'S ASSIGNMENT OF ERROR No. 9
Mr. Hansel contends the trial court erred when it valued 25,672 unvested stock options because it omitted the strike price when it calculated the value of these options. Mrs. Hansel concedes that this is true. Both parties agree that the total strike price of these options was $216,069.25. Therefore, one-half of this amount, i.e. $108,034.62 should be deducted from the equalizing payment to Mrs. Hansel.

APPELLANT'S ASSIGNMENT OF ERROR No. 10
Mr. Hansel contends the trial court erred when it valued the Barnett Bank stock that had been converted to Nations Bank stock. Mrs. Hansel concedes that this is true.
When Nations Bank acquired Barnett Bank, the Hansels' Barnett shares were converted to Nations Bank shares at a ratio of 1.1875 shares of Nations Bank for each share of Barnett Bank. However, when the trial court calculated the value of the stock, it multiplied the number of Barnett shares times the Nations Bank value which lead to an error of $398,698.08. Therefore, half of the amount of the error, i.e. $199,349.04 should be deducted from the equalizing payment to Mrs. Hansel.

APPELLANT'S ASSIGNMENT OF ERROR No. 11
Finally, Mr. Hansel contends that the trial court erred in determining the amount of the equalizing payment due to Mrs. Hansel. The trial court awarded Mrs. Hansel an equalizing payment of $9,359,036.00. However, this amount did not take into account the tax consequences that Mr. Hansel would incur when he exercised certain Hibernia stock options allocated to him. These options, valued by the trial court at $24,095,308, would be subject to a combined federal and state income tax rate of 45.5%. This would amount to $10,963,365.14 in taxes. As stated earlier in this opinion, Mr. Hansel should be credited with this tax liability. Accordingly, one-half of this amount, i.e. $5,481,682.57 should be deducted from the equalizing payment to Mrs. Hansel. The equalizing payment also did not take into account those factors discussed in appellant's *947 assignments of error 8, 9, and 10. As stated in the individual discussions of those assignments, the amounts of $591,030, $108,034.62, and $199,349.04 respectively should also be deducted from the equalizing payment. Accordingly, the amount of the equalizing payment due to Mrs. Hansel should be reduced from $9,359,036 to $2,978,940.23.

APPELLEE'S ASSIGNMENT OF ERROR No. 1
Mrs. Hansel contends that the trial court erred in finding a portion of the Barnett Bank stock to be Mr. Hansel's separate property. At trial, Mrs. Hansel argued that all shares acquired through the exercise of Mr. Hansel's separately owned options were community property because community funds were used in paying the strike prices when the options were exercised. Mr. Hansel argued that all Barnett Bank stock acquired through the exercise of options that vested before his marriage to Mrs. Hansel were his separate property. Alternatively, Mr. Hansel argued that the options should be classified as separate or community property based on a time line approach utilizing each option's date of grant and the date that the option vested.
The trial court accepted Mr. Hansel's alternative position and classified some of the options as community property while others were classified as separate property. On the basis of this allocation, 29,054 shares were found to be community property, 27,762 shares were found to be Mr. Hansel's separate property, and 522 shares were Mrs. Hansel's separate property (she had acquired these shares before her marriage to Mr. Hansel). It was the trial court's opinion that Mr. Hansel established, contrary to the testimony of Mrs. Hansel, that only he had signed and was obligated on any note secured for the purposes of acquiring this stock. Consequently, the trial court found that that portion of the stock which resulted from Mr. Hansel's separate Barnett stock options was his separate property, as they were exercised by his separate obligation. The trial court evidently found Mr. Hansel's testimony and evidence more persuasive than that of Mrs. Hansel. This is a finding of fact and an issue of pure credibility. In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), 666 So.2d 612, 614; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Based on our review of the record, we cannot say that the trial court's finding was manifestly erroneous.

APPELLEE'S ASSIGNMENT OF ERROR No. 2
Mrs. Hansel next contends that if this Court affirms the judgment of the trial court concerning the classification of the Barnett stock she is entitled to a reimbursement claim for the community funds used to acquire those shares of Barnett stock that the trial court classified as Mr. Hansel's separate property. This contention is in direct conflict with the trial court's factual finding that Mr. Hansel used separately borrowed funds to exercise his separate options. We find no error with this factual finding. Accordingly, no community funds were used to support Mrs. Hansel's claim for reimbursement.

APPELLEE'S ASSIGNMENT OF ERROR No. 3
Mrs. Hansel next argues that it was error for the trial court to allocate 29,054 shares of stock in Barnett Bank to her because the stock secured Mr. Hansel separate indebtedness with Morgan Keegan & Co., Inc. Mrs. Hansel asked that she be allocated one-half of the Barnett Bank stock. This stock was encumbered during the existence of the community. Mrs. Hansel was aware of this fact. The *948 trial court can only partition the community as it finds it. Accordingly, this assignment of error is without merit.

APPELLEE'S ASSIGNMENT OF ERROR No. 4
Mrs. Hansel next contends that the trial court erred in not finding that all of the Hibernia stock options granted during the community were community property regardless of the vesting date of the options. The trial court found the options to be part community and part separate and pro-rated the options based on the vesting date, where the vesting date was after termination of the community. The trial court also found that there was a dual purpose in awarding the options, that is to reward Mr. Hansel for past performance as well as to serve as an incentive for him to perform well in the future.
It is indisputable that the Hibernia stock options derive from Mr. Hansel's employment with Hibernia. The issue is what part derives from community, and what part from separate, efforts, skill, and industry. To the extent that a right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La. C.C. art. 2338; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). The key words here are to the extent. In the instant case the trial court found that the options were partly earned during the existence of the community and partly earned after its termination. The Supreme Court has held that if part of an employee's pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee's separate property (or as property of a different marital regime) and separated from the community property interest to be divided. La. R.S. 9:2801 (1991); T.L. James & Co., Inc. v. Montgomery, supra; Hare v. Hodgins, 586 So.2d 118 (La.1991). This same principle should apply to stock options which were granted during the community but which vested at some point in time after the community's termination. Therefore, there was nothing manifestly erroneous or clearly wrong in the trial court's prorating the stock options based on the vesting date.

APPELLEE'S ASSIGNMENT OF ERROR No. 5
Mrs. Hansel next contends that the trial court erred by using a formula for apportioning the Hibernia stock options which did not take into consideration Mr. Hansel's past labor, skill and industry. For the same reasons stated above, we find no error in the trial court's prorating the options. This is especially true when the dual purpose for granting the options is considered.

APPELLEE'S ASSIGNMENT OF ERROR No. 6
Mrs. Hansel also contends that the trial court erred in classifying the 1997 Hibernia stock option grant as Mr. Hansel's separate property. The trial court did this because both the grant date and the vesting date occurred after the community terminated. The trial court reasoned that the asset did not even exist until after the community terminated and therefore there was no way that the 1997 grant could be deemed to be community property. We cannot say that this finding was clearly wrong or manifestly erroneous.

APPELLEE'S ASSIGNMENT OF ERROR No. 7
Mrs. Hansel next contends that the trial court erred in not accepting the Black Sholes model to value the unvested options. Essentially Mrs. Hansel argues that the trial court erred in accepting the opinions of Mr. Hansel's expert rather than her expert's opinions. Mrs. Hansel put on the testimony of Ron Christner, an associate professor of finance at Loyola University. Mr. Christner used the Black Sholes model to value the unvested stock options. Mr. Hansel *949 put on the testimony of Mike Conefry, an actuary. Mr. Conefry did not give an opinion as to the value of the unvested stock options; he valued the discount using a present value/discount method. The trial court found that Mr. Conefry's method more fairly and accurately established a present value of the unvested stock options than did the model employed by Mr. Christner. The trial court was not manifestly erroneous or clearly wrong in accepting the opinions of Mr. Conefry over those of Mr. Christner. Even uncontradicted expert testimony is not binding on the factfinder. J.A.G. v. Schmaltz, 95-2755 (La.App. 4 Cir. 10/23/96), 682 So.2d 331, 337.

APPELLEE'S ASSIGNMENT OF ERROR No. 8
Mrs. Hansel next contends that the trial court erred in accepting the twenty-three percent (23%) discount factor in the valuation of Hibernia restricted stock put forward by Mr. Conefry rather than the ten percent (10%) discount figure put forward by Mr. Christner. This is clearly a finding of fact to which the factfinder is to be accorded great deference. As stated above, even uncontradicted expert testimony is not binding on the trial court. Id.

APPELLEE'S ASSIGNMENT OF ERROR No. 9
Mrs. Hansel's ninth assignment of error alleges that the trial court erred as a matter of law in not ordering Mr. Hansel to pay legal interest on the equalizing cash payment from the date of judgment, even though the lump sum cash payment was not due for 180 days following the signing of the partition judgment. Pursuant to La. R.S. 9:2801(4)(c), the equalizing payment shall be made "upon such terms and conditions as the court shall direct." If the trial court had wanted to award legal interest from the date of judgment or any other date, it could have done that. However, the trial court ordered that the equalizing cash payment be made in 180 days from the date of judgment. Accordingly, we find no error in the trial court's refusal to award legal interest.

APPELLEE'S ASSIGNMENT OF ERROR No. 10
Mrs. Hansel's tenth assignment of error alleges that the trial court erred as a matter of law in not ordering Mr. Hansel to provide security for the equalizing payment. La. R.S. 9:2801(4)(c) expressly states that the equalizing payment may be "secured or unsecured." Clearly it was well within the trial court's discretion not to order security.

APPELLEE'S ASSIGNMENT OF ERROR No. 11
In her eleventh assignment of error, Mrs. Hansel alleges that the trial court erred in recognizing Mr. Hansel's reimbursement claim in the amount of $149,958 for the payoff of the second mortgage on his separate Scott Mill Road property. However, for this assignment of error there are no references by volume or page to the places in the record which contain the facts upon which this assignment of error is based. Accordingly, this assignment of error is stricken subject to Rule 2-12.4 of the Uniform Rules of the Courts of Appeal.

APPELLEE'S ASSIGNMENT OF ERROR No. 12
In her twelfth assignment of error Mrs. Hansel contends that the trial court erred in awarding her only $2,414 for reimbursement of community funds used to enhance Mr. Hansel's separate property. As with Mrs. Hansel's eleventh assignment of error, there are no references by volume or page to the places in the record which contain the facts upon which this assignment of error is based. Accordingly, this assignment of error is also stricken subject to Rule 2-12.4 of the Uniform Rules of the Courts of Appeal.

*950 APPELLANT'S ASSIGNMENT OF ERROR No. 13
In her final assignment of error, Mrs. Hansel contends that the trial court erred in determining the amount of reimbursement that Mrs. Hansel was entitled to for Barnett Bank stock dividends. In its judgment, the trial court awarded Mrs. Hansel only $13,827.90 with respect to Barnett Bank stock dividends. However, the trial court found that fifty-one percent (51%) of the Barnett Bank stock was community. Therefore, Mrs. Hand contends that the minimum amount that she should have been awarded in Barnett Bank dividends was $27,838.10. Mr. Hansel does not dispute this. Accordingly, Mrs. Hansel should have been awarded $27,838.10 for her share of the dividends. Furthermore, the post-partition Barnett Bank dividends should go along with the allocated community shares.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court with the following exceptions. It is our opinion that Mr. Hansel should be given credit for the tax liability he will incur when he exercises the Hibernia stock options. Accordingly, $5,481,682.57 should be deducted from the equalizing payment due to Mrs. Hansel. We also find that the trial court erred in including 71,640 Hibernia incentive stock options, which had already been partitioned, in its judgment. Accordingly another $591,030.00 should be deducted from the equalizing payment due to Mrs. Hansel. The trial court also erred when it valued 25,672 unvested stock options because it omitted the strike price when it calculated the value of these options. Accordingly, the equalizing payment due to Mrs. Hansel should be decreased by another $108,034.62. The trial court also erred when it valued the Barnett Bank stock that had been converted to Nations Bank stock. Accordingly, the equalizing payment due to Mrs. Hansel should be reduced by another $199,349.04. Based on the aforementioned reductions, it is our opinion that the equalizing payment due to Mrs. Hansel should be reduced from $9,359,036.00 to $2,978,940.23. We further find that the trial court erred in determining the amount of reimbursement that Mrs. Hansel was entitled to for Barnett Bank stock dividends. Accordingly, this amount is increased from $13,827.90 to $27,838.10.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ARMSTRONG, J., concurs in the result.
NOTES
[1] Mr. Hansel's first wife was deceased; there were three children from Mr. Hansel's first marriage.
[2] In the final paragraph of the trial court's reasons for judgment, this figure is incorrectly given as $24,095,308.
[3] La. C.C. art. 2334 Revision Comments 1979(b).