928 So.2d 10 (2005)
Timothy MELANCON
v.
Karen Henderson MELANCON.
No. 2004 CA 2569.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
Writ Denied May 5, 2006.
*11 David R. Paddison, Covington, Counsel for Plaintiff/Appellee Timothy Melancon.
Christine O'Brien Lozes, Covington, Philip E. Henderson, Houma, Counsel for Defendant/Appellant Karen Henderson Melancon.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
McCLENDON, J.
This case involves the classification of certain stock options arising from the employment of plaintiff, Timothy Melancon, and acquired by him during his marriage to the defendant, Karen Henderson Melancon (now Karen H. Phayer). Ms. Phayer appeals the judgment of the trial court classifying only those segments of the stock options that had vested at the time of the dissolution of the community as community property. For the following reasons, we affirm in part, reverse in part, and render.

FACTS AND PROCEDURAL HISTORY
Mr. Melancon and Ms. Phayer were married on December 22, 1984. Mr. Melancon filed a petition for divorce on March 25, 1998, and a judgment of divorce was entered on January 19, 1999. Thus, the community property regime between Mr. Melancon and Ms. Phayer was in existence from December 22, 1984 to March 25, 1998.
On June 28, 2002, Ms. Phayer filed a petition to partition the community property pursuant to LSA-R.S. 9:2801. The trial on the partition was set for March 18, 2004, at which time the parties stipulated and agreed to a partition of all community property with the exception of two stock options.[1] A consent judgment of partial partition was signed on May 24, 2004. A hearing on the remaining issue was held on May 24, 2004. On June 24, 2004, the trial court issued written reasons for judgment in which it classified as community property only those segments of the stock options that had fully vested prior to the termination of the community. Judgment was signed on July 28, 2004, and Ms. Phayer appealed.
Mr. Melancon began employment with Agouron Pharmaceuticals, Inc. on December 23, 1996. As an incentive to continue employment with Agouron, Mr. Melancon received Agouron Stock Option Grant No. 1432 and Agouron Stock Option Grant No. 1447. Stock Option No. 1432 was granted to Mr. Melancon on December 23, 1996, *12 and provided for a total of 3,000 shares in four segments. The first 750-share segment was exercisable on December 23, 1997 and the remaining three 750-share segments vested on December 23 of the years 1998, 1999, and 2000. The vesting of each segment was contingent on Mr. Melancon's employment with the company on the scheduled vesting date. Stock Option No. 1447 was granted on January 6, 1997, and also provided for a four-year vesting schedule for 4,500 shares, with 1,125 shares exercisable each year on January 6 for the years 1998, 1999, 2000, and 2001. Again, the vesting of each segment was contingent upon Mr. Melancon's employment with the company on the scheduled vesting date. Thus, the first segment of both stock options fully vested during the existence of the community and the remaining three segments of the options vested after termination.
Agouron merged with Warner Lambert Co. in May 1999, and Warner Lambert was then acquired by Pfizer, Inc. in March 2000. Mr. Melancon remained an employee of the successor company after each transition, and the original stock option grants were ultimately converted to Pfizer stock options.[2]
Mr. Melancon terminated his employment with Pfizer in May 2003, and pursuant to the terms of the stock option plans, he exercised the stock options in question on August 8, 2003.
The only issue on appeal is the classification of the stock acquired as a result of the stock options. Ms. Phayer argues that all the shares of stock should be classified as community property as the stock options were granted to Mr. Melancon during the existence of the community property regime or, alternatively, that the shares of stock derived from the option segments that had not fully vested at the time of the termination of the community should be prorated based on the length of community time between the grant date and the vesting date. On the other hand, Mr. Melancon claims that all the shares of stock are his separate property. Alternatively, he argues that only the segments that had vested as of the date on which the community terminated are community property. He contends that all other shares are his separate property, acquired by him through his separate labor after termination of the community.

DISCUSSION
Initially, we note that a trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. Ross v. Ross, 02-2984, p. 18 (La.10/21/03), 857 So.2d 384, 395; Biondo v. Biondo, 99-0890, pp. 4-5 (La.App. 1 Cir. 7/31/00), 769 So.2d 94, 99. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Biondo, 99-0890 at pp. 4-5, 769 So.2d at 99. In this matter, the trial court made the factual determination that only the first segment of each stock option was community property and classified as Mr. Melancon's separate property the three *13 segments of each option which fully vested after termination of the community.
Pursuant to Article 2338 of the Louisiana Civil Code, community property comprises "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse." This includes the right to the payment of any compensation for work done during the community. Lanza v. Lanza, 04-1314, 04-1756, p. 16 (La.3/2/05), 898 So.2d 280, 290. Therefore, to the extent that Mr. Melancon has received compensation after the community regime because of work done during the community, this compensation is community property. Id.
With regard to the first segment of each stock option, which fully vested during the community property regime, we find no error in the trial court's determination that said segments are community property. These initial segments clearly vested during the community through the effort, skill and industry of Mr. Melancon.
Ms. Phayer cites Camp v. Camp, 580 So.2d 553 (La.App. 1 Cir.), writ denied, 587 So.2d 693 (La.1991), and Larsen v. Larsen, 583 So.2d 854 (La.App. 1 Cir.), writ denied, 590 So.2d 63 (La.1991), in support of her contention that the remaining segments of the disputed stock options are also community property. In the Camp case, this Court addressed the issue of whether stock which had been granted by the husband's employer during the marriage, but which had not yet vested as of the date of termination of the community, was community or separate property. The stock at issue had been contributed to the husband's employee stock option plan (ESOP) during the community, but was subject to a vesting schedule. The Court stated:
[W]e find that the total sum of shares that was contributed to the ESOP as of March 31, 1986, whether vested or unvested, is community property. Each contribution by [the employer] to the ESOP entitled Mr. Camp to share subsequently in the plan benefits. Since the property right to share ultimately in the 282.9828 shares was acquired by Mr. Camp during the marriage, it is properly classified as a community asset, even though the contractual right to receive these shares was due in the future and contingent upon continued employment by Mr. Camp.
Camp, 580 So.2d at 555.
In Larsen, the Court found the Camp case controlling in classifying the non-vested portion of an employee thrift fund as community property, stating that the property right to ultimately receive proceeds from the thrift fund was acquired during the marriage. Larsen, 583 So.2d at 857-58.
Although we find the analysis set forth in the Camp and Larsen cases informative, nonetheless, we find both cases to be factually distinguishable from the present matter. The Camp case involved pension benefits and Larsen involved an employee thrift plan. Additionally, in both cases, the contributions had already been made by the employer.
More factually analogous to the case sub judice is the Fourth Circuit case of Hansel v. Holyfield, 00-0062 (La.App. 4 Cir. 12/27/00), 779 So.2d 939, writs denied, 01-0279, 01-0276 (La.4/12/01), 789 So.2d 591. In Hansel, the court prorated stock options that had not yet vested as of the date of the termination of the community based on the length of community time between the grant date and the vesting date. The court stated:
With regards to the Hibernia stock options that had not vested before the termination of the community, Mr. Hansel argued that theses [sic] options *14 should be deemed to be his separate property or at least pro-rated while Mrs. Hansel argued that they should be treated as community property. Therefore, the appropriate inquiry is whether the Hibernia stock options were property rights either acquired by Mr. Hansel during the community or acquired by him as a result of his effort, skill and industry during the community. The trial court found that the stock options granted to Mr. Hansel served a dual purpose of rewarding him for past service and as an incentive for future performance. Based on this, the trial court ruled that the options should be prorated based on the amount of time between the grant date and the vesting date that took place during the community. This is in accordance with the principle that the determinative factor is whether work performed during the existence of the community was taken into consideration in granting the option.
Hansel, 00-0062 at p. 8, 779 So.2d at 945.
The court further stated:
It is indisputable that the Hibernia stock options derive from Mr. Hansel's employment with Hibernia. The issue is what part derives from community, and what part from separate, efforts, skill, and industry. To the extent that a right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. The key words here are to the extent. In the instant case the trial court found that the options were partly earned during the existence of the community and partly earned after its termination. The Supreme Court has held that if part of an employee's pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee's separate property (or as property of a different marital regime) and separated from the community property interest to be divided. This same principle should apply to stock options which were granted during the community but which vested at some point in time after the community's termination. Therefore, there was nothing manifestly erroneous or clearly wrong in the trial court's prorating the stock options based on the vesting date. (Citations omitted.)
Hansel, 00-0062 at pp. 14-15, 779 So.2d at 948.
In the instant case, the stock options at issue were acquired during the existence of the community property regime. While we agree that the stock grants were based on Mr. Melancon's employment with Agouron and its successors, they were not based, as asserted by Mr. Melancon, on any unusual or extraordinary effort on his part. The stock options were based simply on his continued employment with the company. Moreover, at the time of each stock option grant, the community acquired an asset even though the right to exercise the option was contingent upon Mr. Melancon's continued employment. As stated in Camp:
The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of a marriage, the right-to-share is a community asset which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time. Messersmith v. *15 Messersmith, 229 La. 495, 86 So.2d 169, 174-75 (1956).
Camp, 580 So.2d at 554, quoting T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 851 (La.1976) (on rehearing).
We find that the trial court was clearly wrong in determining that the last three segments of both disputed stock options were entirely the separate property of Mr. Melancon. Instead, we agree with prorating the stock options as set forth in Hansel finding value in the right acquired during the existence of the community to subsequently share in the stock options, even though the contractual right to the value was due in the future and contingent upon the happening of a later event.
Further, there is no dispute regarding the mathematical calculations of Charles Theriot, the certified public accountant who presented alternative computations of Ms. Phayer's community interest in the shares which were acquired from the August 2003 exercise of the stock options. The only issue is the method of calculation to be applied. We find that the calculation set forth in Exhibit B, which prorates the stock derived from the remaining three segments of Stock Option No. 1432 and Stock Option No. 1447 based on the lengths of community and separate employment between each stock option's grant date and vesting date, with the maximum federal income taxes withheld, to be the appropriate and applicable calculation of shares.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court insofar as it holds that the first segment of Stock Option No. 1432 and the first segment of Stock Option No. 1447 are community property. We reverse the judgment of the trial court in so far as it holds that the remaining segments of said stock options are the separate property of Mr. Melancon. We award Ms. Phayer $115,075.00, which represents 3,490.3 shares of Pfizer stock as of August 9, 2003, and represents her community property interest in Stock Option No. 1432 and Stock Option No. 1447.[3] Costs shall be borne by Timothy Melancon.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Mr. Melancon was granted ten stock options during his employment; however, only two were at issue when the partition was submitted to the trial court.
[2] One share of Agouron stock converted to 4.937 shares of Pfizer stock.
[3] The $115,075.00 amount represents the purchase of Pfizer stock at the price of $32.97 per share, the closing price on August 8, 2003, and with maximum tax due withheld.